IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AKHI RAHEEM MUHAMMAD            :            CIVIL ACTION
                                :
            v.                  :
                                :
GREGORY T. WEIS, et al.         :            NO.  08-3616

## MEMORANDUM

Pro se Plaintiff Akhi Raheem Muhammad[1] brings this action in forma pauperis against more

than 200 defendants, pursuant to 42 U.S.C. §§ 1983 and 1985, as well as the Pennsylvania Human

Relations Act ("PHRA"), alleging violations of his constitutional rights as well as rights afforded

to him under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132,

and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a).   Plaintiff seeks

compensatory, injunctive, and declaratory relief.   Currently before the Court is Plaintiff's Second

Amended Complaint (Docket No. 67).   For the following reasons, all claims except Plaintiff's ADA

and RA claims against the Pennsylvania Department of Insurance are either dismissed, pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1406(a), or transferred to the United States District Court

for the Western District of Pennsylvania, pursuant 28 U.S.C. § 1406(a).

## I.      BACKGROUND

Plaintiff describes himself as "an adult African American Male, who[] is a practicing

Muslim" and who "suffers from the disease, diabetes and its **many** complications."   (2nd Am.

Compl. ¶¶ 12, 13.)  On July 30, 2008, Plaintiff filed a pro se Complaint against 111 defendants, all

in their official capacities, along with a motion to proceed in forma pauperis.  In an Order dated

---

[1]Plaintiff has also gone by the name Roy Sudduth.  See, e.g., Sudduth v. Rogiero, 549 U.S. 1082
(2006) (captioned "Roy Sudduth, aka Raheem Muhammad"); Sudduth v. Commonwealth of Pa. Dep't of
Transpo., 926 A.2d 1003 (Table) (Pa. 2007) (captioned "Roy Mark Sudduth, a/k/a Raheem Muhammad").

August 11, 2008, we dismissed Plaintiff's Complaint with leave to amend because the Complaint "did not contain sufficient information," and we directed Plaintiff to "fully describe [in his Amended Complaint] how each of the individual defendants is involved in his claims."

Plaintiff subsequently filed an Amended Complaint, which suffered from many of the same inadequacies as the original and which added claims pursuant to 42 U.S.C. § 1983 for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the First, Seventh, Ninth, and Tenth Amendments.  In a March 10, 2009 Order-Memorandum, we dismissed Plaintiff's First Amended Complaint pursuant to 28 U.S.C. §§ 1406(a) and 1915(e)(2)(B), again with leave to amend, citing our concern that the Eastern District of Pennsylvania was not the proper venue for Plaintiff's claims and highlighting several significant pleading deficiencies.  See Muhammad v. Weis, Civ. A. No. 08-3616, 2009 WL 637112, at *1-2 (E.D. Pa. Mar. 11, 2009).

Plaintiff filed his Second Amended Complaint on June 12, 2009.  Although the Second Amended Complaint fills in many of the factual gaps in Plaintiff's previous complaints, it spans nearly 70 pages (more than triple the length of the First Amended Complaint), names more than 200 defendants,[2] asserts more than a half-dozen new causes of action, and describes events wholly unrelated to those alleged in previous complaints.  From our reading, we discern at least seven, discrete series of transactions that form the basis of Plaintiff's myriad claims, including: (1) a 2004 automobile accident in Pittsburgh and related litigation in Allegheny County from 2004 to 2007 (see 2nd Am. Compl. ¶¶ 111-85); (2) the issuance of two traffic citations in Millvale, Pennsylvania in 2005, and related litigation in Allegheny County from 2005 to 2007 (id. ¶¶ 37-84); (3) a legal

---

[2]Plaintiff again included Warren Buffet as a defendant, in spite of our March 4, 2009 Order-Memorandum granting Buffet's motion to dismiss for lack of personal jurisdiction.  See Muhammad v. Weis, Civ. A. No. 08-3616, 2009 WL 564441, at *1-2 (E.D. Pa. Mar. 4, 2009).

malpractice lawsuit initiated in Allegheny County in July 2005, and related litigation there from 2005 to 2007 (id. ¶¶ 203-220); (4) a second legal malpractice lawsuit initiated in Allegheny County in September 2005 and related litigation there from 2005 to 2008 (id. ¶¶ 190-202); (5) the revocation of Plaintiff's car insurance and related litigation from 2007 to 2008 (id. ¶¶ 86-105); (6) the forced removal of Plaintiff's kufi, a religious head covering, at legal proceedings in the courtrooms of various Allegheny County judges, named as Defendants, between 2004 and 2008 (id. ¶¶ 358-64); and (7) a 2009 lawsuit against Allegheny County Adult Probation and Parole over some money Plaintiff paid them to secure the release of his incarcerated nephew.  (Id. ¶¶ 221-48.)

## II.   LEGAL STANDARD

Because Plaintiff brings this action in forma pauperis pursuant to 28 U.S.C. § 1915, we may dismiss sua sponte any claims that we determine (1) are "frivolous or malicious," (2) "fail[] to state a claim on which relief may be granted," or (3) "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  A claim is frivolous if it is "based on an indisputably meritless legal theory" or its "factual contentions are clearly baseless."  Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (citing Neitzke v. Williams, 490 U.S. 319, 327-28 (1989)). We review the sufficiency of the pleadings under § 1915(e)(2)(B) using the same standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3]  See Tourscher v.

---

[3]When reviewing a motion to dismiss pursuant to Rule 12(b)(6), we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).  A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ.P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  While the complaint's factual allegation need not be detailed, the grounds upon which the claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citation omitted).  At bottom, the complaint must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  As the Supreme Court recently clarified in

McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  We need not grant a plaintiff leave to amend frivolous claims.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 112-13 (3d Cir. 2002).

Where a plaintiff brings his case in the wrong venue, we must either dismiss the case or "transfer [it] to any district or division in which it could have been brought" "if it be in the interest of justice . . . ."  28 U.S.C. § 1406(a).  We may transfer a case pursuant to § 1406(a) either upon motion by the defendant or sua sponte.  See Lafferty v. St. Riel, 495 F.3d 72, 74-75, 75 n.3 (3d Cir. 2007) (leaving undisturbed the district court's sua sponte transfer of a case pursuant to § 1406(a)); Decker v. Dyson, 165 F. App'x 951, 954 n.3 (3d Cir. 2006) ("Under 28 U.S.C. § 1406(a), a district court, upon a motion or sua sponte, may transfer a case to a court of proper jurisdiction when such a transfer is in the interest of justice.").  However, it is not in the interest of justice to transfer a case that is frivolous.  Cf. Wojciechowski v. United States, 116 F. App'x 268, 269 (Fed. Cir. 2004) (citing Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000-01 (Fed. Cir. 1987)); Pearson v. Food & Drug Admin., 65 F.3d 175 (Table) (per curiam) (9th Cir. 1995).  Likewise, transfer is not in the interest of justice "where . . . [it] would be futile because the case would be dismissed even after

---

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 129 S. Ct. at 1949 (citations and quotations omitted).  We do not have to accept as true a plaintiff's asserted legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (citing Twombly, 550 U.S. at 555). Only when "the well-pleaded facts . . . permit the court to infer *more* than the mere *possibility* of misconduct" does the complaint show (as opposed to merely allege) "that the pleader is entitled to relief."  Id. at 1950 (emphasis added) (quoting Fed. R. Civ. P. 8(a)(2)).

4

transfer." Econ. Research Servs., Inc. v. N. Western Corp., Civ. A. No. 07-4175, 2007 WL 4557785, at *4 (N.D. Cal. Dec. 21, 2007) (citing King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992)).

## III.   DISCUSSION

In the Second Amended Complaint, Plaintiff asserts ten causes of action, including: (1) claims pursuant to Title II of the ADA; (2) claims pursuant to Section 504 of the RA; (3) claims of malicious prosecution and unlawful seizure; (4) claims pursuant to Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978); (5) claims of "supervisory violations"; (6) a claim of conspiracy in violation of 42 U.S.C. § 1983; (7) a claim of obstruction of justice in violation of 42 U.S.C. § 1985(2); (8) a claim of conspiracy in violation of 42 U.S.C. § 1985(3); (9) "negligent supervision" claims; and (10) a First Amendment claim.  We address each cause of action separately below.

### A.   ADA Claims

In his first cause of action, Plaintiff asserts claims under Title II of the ADA against all 200-plus Defendants.  Plaintiff alleges that all of the Defendants denied him the benefits of their public services or facilities because of his disability.  For the following reasons, all of Plaintiff's ADA claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) except those against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance. Moreover, we sever and transfer Plaintiff's claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court to the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1406(a).

Title II provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In order to state a claim for a violation of Title II, a plaintiff must establish the following: "(1) he is disabled; (2) he has been excluded from participation in or denied the benefits of services, programs, or activities provided by a public entity, or was otherwise discriminated against by a public entity; and (3) that such discrimination was based on his disability."  Hogan v. City of Easton, Civ. A. No. 04-759, 2004 WL 1836992, at *6 (E.D. Pa. Aug. 17, 2004) (footnote omitted) (citing Adelman v. Dunmire, Civ. A. No. 95-4039, 1997 WL 164240, at *1 (E.D. Pa. Mar. 28, 1997)).

We find that Plaintiff has properly alleged that he satisfies the ADA's definition of "disabled."  The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  In the Second Amended Complaint, Plaintiff alleges that he suffers from diabetes-related visual impairments that substantially limit one or more major life activities, that he has a record of "*visual impairments*," and that he was regarded as disabled by Defendants.  (2nd Am. Compl. ¶ 265.) Moreover, the factual allegations, taken as true, properly demonstrate that Plaintiff is significantly restricted in his ability to read as a result of his visual impairments.  (See, e.g., id. ¶¶ 44-46.)  Consequently, Plaintiff has sufficiently alleged that he is disabled for purposes of the ADA.  See 29 C.F.R. § 1630.2(j) (defining "substantially limits"); 42 U.S.C. § 12102(2)(A) (including "seeing" and "reading" in the definition of "major life activity").  Moreover, we find that Plaintiff has sufficiently alleged throughout the Second Amended Complaint that he endured discrimination "due to his . . . vision impairments [sic] disabilities.'" (E.g., 2nd Am. Compl. ¶ 182 (emphasis omitted).)

Nevertheless, Title II only applies to discrimination by a "public entity," which means: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  Title II therefore does not apply to individuals, private entities, or federal entities.  See Emerson v. Thiel College, 296 F.3d 184, 189 & n.3 (3d Cir. 2002); Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, 212 (3d Cir. 2008) (citing 42 U.S.C. § 12132).  Because Plaintiff may only pursue his ADA claims against the public entity Defendants,[4] his ADA claims against the individual Defendants[5] and the private entity Defendants[6] are dismissed as frivolous, pursuant to 28 U.S.C. §

---

[4]The public entity Defendants include: Pennsylvania Judicial Conduct Board; Pennsylvania Department of Public Welfare; Pennsylvania Department of Insurance; Pennsylvania Department of Transportation; Borough of Millvale, Pennsylvania; Millvale Police Department; the City of Pittsburgh; Allegheny County, Pennsylvania; Allegheny County Sheriff's Office; Allegheny County Department of Adult Probation and Parole; Allegheny County Office of the Public Defender; Allegheny County Justice Related Services; Allegheny County Department of Court Records; Allegheny County Law Department; Administrative Office of Pennsylvania Courts; Superior Court of Pennsylvania; Commonwealth Court of Pennsylvania; Supreme Court of Pennsylvania; and Commonwealth of Pennsylvania.

Plaintiff also brings claims against Legal Services Corporation, Neighborhood Legal Association of Pittsburgh, and Pennsylvania Legal Services Corporation, but it is unclear from the allegations in the Second Amended Complaint whether these entities are instrumentalities of state or local government. We note, however, that Legal Services Corporation is a private, nonprofit corporation, established by Congress in 1974, that serves as an umbrella organization for the nation's nonprofit legal aid programs. See LSC.gov, "What is LSC?," http://www.lsc.gov/about/lsc.php (last accessed August 12, 2009).

[5]The individual Defendants include: Alice Hinkle, Allen D. Biehler, Amy Kroll, Andrew M. Rapach, Angeline Sposito, Arthur Ettinger, Arthur F. McNulty, Barabara Caprino, Barbara Lelenko, Barry F. Feudale, Bernard J. McAuley, Bernard L. McGinley, Beverly J. Points, Bonnie Brigance Leadbetter, Brian W. DelVecchio, Cathy Gerhold, Cathy O'Brien, Charlene Christmas, Cheryl Lynn Allen-Skipworth, Christiana Judith Hunley, Christine A. Ward, Christine L. Donohue, Corneale F. Stevens, Cynthia A. Baldwin, Daniel Onorato, Daniel R. Schuckers, Dante R. Pellgrini, David A. Hoffman, David B. White, David Brandon, David J. Hickton, David N. Wecht, Dawn Cross, Dean Girty, Debra Todd, Donna Jo McDaniel, Doris A. Smith-Ribner, Dorry Lang, Edward G. Rendell, Edward L. Edelstein, Edwin B. Rust, Eileen M. Conroy, Eleanor Valecko, Elizabeth Ann Beroes, Elizabeth Collura, Eric Feder, Eugene M. Strassburger, III, Frank M. Gianola, George F. Matta, II, Geraldine Moten, Gregory Weis, Guy J. Mattola, Harold Cramer, Helen M. Barnett, India Smith, J. Michael Eakin, Jack A. Panella, Jacqueline O. Shogan, James A. Johnson, James Burns, James Del Sole, James Ferlo, James Gardener Colins, James J. Dodaro, James J. Fitzgerald, III, James

1915(e)(2)(B)(i).

Moreover, Plaintiff's factual allegations involve only *some* of the public entity Defendants. That is, Plaintiff has alleged facts sufficient to state claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance, all of whom are alleged to have repeatedly denied his requests for reasonable accommodations of his visual impairments, thereby preventing his participation in proceedings.  Plaintiff has therefore failed to satisfy his burden under Fed. R. Civ. P. 8(a) with respect to the remaining public entity Defendants, and we dismiss Plaintiff's claims against those remaining public entity Defendants for failure to state

---

J. Flaherty, James Odenheimer, James R. Kelley, James Rieland, Jane Cutler Greenspan, Janet L. Dolan, Jean Martin, Jeffrey A. Ernico, Jill E. Rangos, Joan Orie Melvin, Joel Ario, Joel Dresbold, John F. Cambest, John Izzo, John L. Musmanno, John M. Cleland, John Pham, John Swick, John T. Bender, John T. J. Kelly, Jr., John Vaskov, Johnny J. Butler, Joseph F. McCloskey, Joseph A. Hudock, Joseph M. James, Joseph Terrick, Judith L. A. Friedman, Karen Joseph, Kate Barkman, Kate Ford Elliot, Katherine Horigan, Kathleen Cavanaugh, Keith B. Quigley, Kelly B. Bakayza, Kevin G. Sasinoski, Khadija Diggs-Terry, Laurie Steng, Linda M. Rogiero, Livingstone Morris Johnson, Lois E. Gannon, Luke Ravenstahl, M. Hanna Leavitt, Mary E. Butler, Mary Jane Bowes, Mary Mullin, Maureen E. Lally-Green, Max Baer, Melanie Norkevicus, Michael E. Lamb, Michael E. Vith, Michael H. Wojcik, Michael J. Cremonese, Michael Machen, Michael Noch, Michael Rogiero, Michael W. Burns, Myrna Patterson, Olza M. Nicely, Pamela Dalton Arlotti, Patricia Viola, Patrick Carey, Patrick R. Tamilia, Peter R. DeFazio, R. Stanton Wettick, Jr., Ralph J. Cappy, Rebecca L. Bickley, Rebecca Planinseck, Renee Cohn Jubelirer, Richard B. Klein, Richard J. Margolis, Richard K. McCartey, Richard P. Jacob, Richard S. Canciello, Robert A. Arcovio, Robert A. Freedberg, Robert C. Gallo, Robert E. Colville, Robert E. Simpson, Jr., Robert G. Borgoyn, Robert Herbert, Robert J. Colville, Robert J. Ray, Robert P. Ravenstahl, Robert V. Racunas, Rochelle S. Friedman, Ronald D. Castille, Sarah Michini, Scott F. Kennedy, Seamus P. McCaffery, Sean Cannon, Sheryl Zidek, Stephen A. Zappala. Stephen J. McEwen, Jr., Susan P. Gantman, Ted Kairys, Terrence W. O'Brien, Terry Sands, Thomas Fallon, Thomas G. Saylor, Timothy Peter Wile, Tomilla Talley, Trevor I. Poremba, Tricia Renee Sorg, W. Arch Irvin, Jr., Walter T. Slezak, Warren E. Buffet, William A. Kuhar, Jr., William P. Mullen, Zigmont A. Pines, and Zoran Popovich.

[6]The private entity Defendants include: Beroes Law Center, P.C., Government Employee Insurance Company ("GEICO"), the Law Offices of Burns, White, and Hickton, the Law Offices of Dodaro, Kennedy, and Cambest, the Law Offices of Wayman, Irving, and McAuley, LLC, and State Farm Insurance.

a claim, pursuant to § 1915(e)(2)(B)(ii).[7]

What remains are Plaintiff's claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance.  However, as we observed in our March 10, 2009 Order-Memorandum and as is now clear from the face of the Second Amended Complaint, only one of Plaintiff's ADA claims, that against the Pennsylvania Department of Insurance, involves events that occurred within the Eastern District of Pennsylvania.  (See 2nd Am. Compl. ¶ 88 (alleging that the Pennsylvania Department of Insurance held a hearing in its Philadelphia office sometime in the year 2007, without providing Plaintiff with reasonable accommodations).)  Venue is therefore proper here only with respect to Plaintiff's claim against the Pennsylvania Department of Insurance.  See 28 U.S.C. § 1391(b)(2); Muhammad, 2009 WL 637112, at *1.  Consequently, we exercise our discretion to sever Plaintiff's ADA claims, see Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 296 (3d Cir. 1994) (citations omitted), retain jurisdiction over his claim against the Pennsylvania Department of Insurance, and transfer his remaining claims to the Western District of Pennsylvania.

B.    RA Claims

In his second cause of action, Plaintiff asserts claims under Section 504 of the RA against

---

[7]We do not grant Plaintiff leave to amend these claims because we find that amendment would be futile.  As we explain more fully infra, we have repeatedly ordered Plaintiff to explain specifically how each Defendant is involved in each of his claims, and he appears either unwilling or unable to comply with our instructions.

We also dismiss Plaintiff's claims against Defendants Legal Services Corporation, Neighborhood Legal Association of Pittsburgh, and Pennsylvania Legal Services Corporation, both because Plaintiff has failed to establish how these Defendants qualify as "public entities" and because it is unclear from the factual allegations in the Second Amended Complaint how these Defendants are involved whatsoever in any of Plaintiff's claims.

all 200-plus Defendants.  These claims are factually identical to Plaintiff's ADA claims.  For the following reasons, all of Plaintiff's RA claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) except those against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance.  Moreover, we sever and transfer Plaintiff's claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court to the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1406(a).

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  In order to establish a violation under Section 504, the plaintiff must demonstrate that: "(1) [he] is a 'handicapped individual" under the Act; (2) [he] is 'otherwise qualified' for the [benefit] sought; (3) [he] was [denied the benefit] sought solely by reason of [his] handicap; and (4) the program or activity in question receives federal financial assistance." Haybarger v. Lawrence County Adult Prob. & Parole, 551 F.3d 193, 198 n.3 (3d Cir. 2008) (emphasis omitted) (quoting Strathie v. Dep't of Transp., 716 F.2d 227, 230 (3d Cir. 1983)).

Plaintiff sufficiently alleges that he is entitled to protection under the RA.  "Section 504 . . . and Title II of the ADA offer similar protections for persons with disabilities."  Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 166 n.3 (3d Cir. 2002); see also Doe v. County of Centre, Pa., 242 F.3d 437, 446-47 (3d Cir. 2001) (finding that the protections found in Title II of the ADA and Section 504 of the RA "are identical").  Indeed, both statutes apply virtually identical

definitions of "disability."  See McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995).  Thus, to the extent that we find Plaintiff has met the definition of disabled for ADA purposes, we find that he has sufficiently alleged that he is disabled for purposes of his RA claims as well.

Plaintiff also generally alleges that all Defendants "are recipients of Federal Financial Assistance in the form of either a *'direct subsidy, federal tax deduction or a federal tax writeoff.'*"  (2nd Am. Compl. ¶ 281.)  Nevertheless, Section 504, like Title II, does not apply to individuals.  See Emerson, 296 F.3d at 190 (citing Smith v. Metro. Sch. Dist., 128 F.3d 1014, 1018-19 (7th Cir. 1997)).  Accordingly, Plaintiff's RA claims against the individual Defendants, see supra note 5, are dismissed as frivolous pursuant to § 1915(e)(2)(B)(i).

In the end, for the same reasons discussed above in our analysis of Plaintiff's ADA claims, Plaintiff has only sufficiently alleged that Defendants Court of Common Pleas of Allegheny County, Pennsylvania Commonwealth Court, Pennsylvania Superior Court, Pennsylvania Supreme Court, and Pennsylvania Department of Insurance denied him a benefit for which he was otherwise qualified.[8]  At the same time, Plaintiff's claims against these Defendants involve acts or omissions

---

[8]Plaintiff has failed to sufficiently allege that any of the private entity Defendants denied him a benefit for which he was otherwise qualified.  For example, Plaintiff inveighs GEICO for unlawfully cancelling his car insurance in 2007, upon learning that his driver's license had been suspended.  (See 2nd Am. Compl. ¶¶ 86, 107.)  In Pennsylvania, however, a car insurer may lawfully cancel or nonrenew the insurance of a driver who has had his license suspended or revoked.  See 40 P.S. § 991.2003(e)(2) ("An insurer may not cancel or refuse to renew a policy of automobile insurance for two or fewer moving violations in any jurisdiction or jurisdictions during a twenty-four (24) month period when the operator's record indicates that the named insured presently bears five points or fewer, unless . . . [t]he driver's license or motor vehicle registration of the named insured has been suspended or revoked.").  Consequently, Plaintiff's allegations do not make it plausible that GEICO denied him a benefit for which he was otherwise qualified.

Plaintiff further assails Defendants State Farm Insurance, Law Offices of Frank M. Gianola, and Law Offices of Wayman, Irving, and McAuley LLC, for "'using every trick in the book' to unlawfully prevent [him] from being afforded his United States Constitutional and civil rights . . ." (2nd Am. Compl. ¶ 188

that occurred almost entirely outside this District, in Allegheny County; only Plaintiff's RA claim against the Pennsylvania Department of Insurance appears to be properly venued here. Consequently, we exercise our discretion to sever Plaintiff's RA claims, see Cottman, 36 F.3d at 296, retain jurisdiction over his claim against the Pennsylvania Department of Insurance, and transfer his remaining claims to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406(a).

        C.       § 1983 Malicious Prosecution and Unlawful Seizure Claims

In his third cause of action, Plaintiff asserts malicious prosecution and unlawful seizure claims, pursuant to 42 U.S.C. § 1983, against Defendants Vith, Girty, Burns, the Borough of Millvale, and the Millvale Police Department.  Plaintiff's claims arise out of a traffic stop and the issuance of two traffic citations in April 2005; the citations charged Plaintiff with driving under a suspended driver's license and driving without proper state inspection stickers.  We dismiss both of these claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), because the two-year statute of limitations applicable to § 1983 actions in Pennsylvania expired on April 24, 2007, more than two years before Plaintiff first filed these claims in June 2009.  See Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993) (holding that a two-year statute of limitations governs § 1983 actions brought in Pennsylvania).

In so doing, we reject Plaintiff's argument that his claims did not accrue, and the statute of

---

(emphasis omitted)), including "refus[ing] to provide [him] with copies of **ALL OF THEIR PLEADINGS** that were filed by them, according to **ALL** applicable state laws . . . ."  (Id. ¶ 189.)  Plaintiff also assails Defendants Neighborhood Legal Services Association of Pittsburgh and Law Offices of Margolis-Edelstein for "fil[ing] a 'Judgment of Non Pros' with the . . . Common Pleas Court" (id. ¶ 192), and for "oppos[ing] [his] requests for *'reasonable accommodations and/or Petition to Strike/Open Judgment of Non Pros.'*" (Id. ¶ 196; see also id. ¶ 213 (alleging that Defendant Law Offices of Dodaro, Kennedy and Cambest had opposed similar requests by Plaintiff).)  None of these allegations support the inference that these Defendants denied Plaintiff a benefit to which he was entitled.

limitations did not begin to run, until September 30, 2006, when he received a copy of his driving record from the Pennsylvania Department of Transportation indicating for the first time that his license had been suspended.  A § 1983 action accrues "when the plaintiff knows or has reason to know of the *injury* which is the basis of the section 1983 action."  <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 919 (3d Cir. 1991) (emphasis added) (citing <u>Deary v. Three Un-Named Police Officers</u>, 746 F.2d 185, 197, n.16 (3rd Cir. 1984)).   When the plaintiff became aware of the constitutional nature of that injury is irrelevant.  <u>See</u>, <u>e.g.</u>, <u>id.</u> (finding that the plaintiffs' claim accrued at the moment they had notice of their injury, not when they realized the defendants were violating federal law).  Here, Plaintiff was aware of his alleged mistreatment the day he was pulled over, <u>i.e.</u>, on April 24, 2005.  (<u>See</u> 2nd Am. Compl. ¶ 38 (indicating that Plaintiff argued with Defendant Vith over the propriety of the citations).)  Moreover, even if we were to find that the limitations period did not begin to run until September 30, 2006, the limitations period would have expired on September 30, 2008, nearly nine months before he first asserted these claims.  Consequently, Plaintiff's claims are untimely, and we dismiss them as frivolous.[9]

D.    <u>Monell Claims</u>

In his fourth cause of action, Plaintiff asserts two <u>Monell</u> claims against 100-plus "Supervisory Defendants," who are individuals "with final policymaking authority for all of the

---

[9]We further note that Plaintiff's malicious prosecution claim is substantively frivolous, as he has failed to allege that any of the proceedings related to the citations at issue were resolved in his favor.  <u>See</u> <u>Kossler v. Cristani</u>, 564 F.3d 181, 186 (3d Cir. 2009) (requiring a plaintiff who brings a malicious prosecution claim to demonstrate, <u>inter</u> <u>alia</u>, "that . . . the criminal proceeding ended in plaintiff's favor" (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003))).  Indeed, it appears that all of Plaintiff's many attempts to challenge the citations were unsuccessful.  (<u>See</u> 2nd Am. Compl. ¶¶ 42-84.) Moreover, this District is an improper venue for both the malicious prosecution and unlawful seizure claims, as all events relevant to the claims occurred in Allegheny County.

Commonwealth of Pennsylvania Agencies and Municipal Agencies . . . ."[10] (2nd Am. Compl. ¶ 305 (emphasis omitted).) The first of Plaintiff's <u>Monell</u> claims is that the "Supervisory Defendants" "had contemporaneous knowledge through the chain of command" that their employees "conducted manipulative borough, county, and state procedures that blatantly violated established state and federal constitutional standards" (2nd Am. Compl. ¶ 307 (emphasis omitted)), but "nevertheless agreed to, approved, and ratified these unconstitutional conducts [sic] . . . ."[11] (<u>Id.</u> ¶ 309 (emphasis omitted).) The second of Plaintiff's <u>Monell</u> claims is that the "Supervisory Defendants" "established a custom or practice of targeting [Plaintiff] and members of [his] protective classes for harsh or disproportionate treatment," by "failing to correct the unconstitutional conduct of [their subordinates]," and assigning their subordinates "to key positions knowing, or with deliberate

---

[10]The "Supervisory Defendants" include Defendants McNulty, Cambest, Brandon, Gerhold, DeFazio, Mullen, Feder, Barkman, Sands, Cramer, Points, Wile, Kuhar, Rapach, Biehler, Dolan, Girty, Ario, J. Johnson, Martin, Jacob, Hoffman, DelVecchio, Wojcik, Kairys, Christmas, Smith, Diggs-Terry, Butler, Kroll, Dresbold, Sposito, McCarthy, Ravenstahl, Conroy, Matta, Lamb, Burns, Onorato, Rieland, Machen, Terrick, Strassburger, O'Brien, Rangos, Gallo, Wecht, R.J. Colville, Ward, James, Wettick, L. Johnson, J. Friedman, Sasinoski, McDaniel, Cappy, Zappala, Baer, Baldwin, Castille, Saylor, Eakin, McCaffery, Shuckers, Greenspan, Todd, Smith-Ribner, Colins, Kelley, McCloskey, Leadbetter, Bernard McGinley, Pellegrini, R.S. Friedman, Flaherty, Feudale, Quigley, Jubelirer, Simpson, Leavitt, J. Butler, Rendell, Pines, M. Butler, Ferlo, Fallon, Lang, Elliot, Stevens, Musmanno, Melvin, Lally-Green, Klein, Bender, Bowes, Gantman, Panella, Donohue, Shogan, Allen-Skipworth, Freedberg, Cleland, Tamilia, Kelly, Popovich, McEwen, Hudock, R.E. Colville, Fitzgerald, Vaskov, Viola, Schuckers, Valecko, and John/Jane Does. (2nd Am. Compl. ¶ 306.) The "Supervisory Defendants" were allegedly employed by Defendants Millvale Police Department, Borough of Millvale, Pennsylvania Department of Insurance, Pennsylvania Department of Transportation, Allegheny County, City of Pittsburgh, Court of Common Pleas of Allegheny County, Allegheny County Sheriff's Office, Allegheny County Department of Adult Probation and Parole, Allegheny County Office of the Public Defender, Allegheny County Justice Related Services, Allegheny County Department of Court Records, Allegheny County Law Department, Administrative Office of Pennsylvania Courts, Pennsylvania Unified Judicial System, Superior Court of Pennsylvania, Commonwealth Court of Pennsylvania, Supreme Court of Pennsylvania, Pennsylvania Department of Public Welfare, and Commonwealth of Pennsylvania. (<u>Id.</u> ¶ 305.)

[11]The employees consist of Defendants Vith, Poremba, O'Brien, Planinseck, Cavanaugh, Sands, Steng, Points, Wile, Kuhar, Rapach, Martin, Moten, Jacob, Hoffman, DelVecchio, Borgoyn, Ettinger, Noch, Collura, Horigan, Sposito, Odenheimer, Terrick, Cannon, Caprino, K. Joseph, Lelenko, Mattola, Norkevicus, Talley, Carey, Del Sole, and "John/Jane Does and their subordinates." (2nd Am. Compl. ¶ 307.)

indifference to the likelihood, that their decisions would result in the violations of [Plaintiff's] constitutional rights."  (Id. ¶¶ 314, 316.)  For the following reasons, we dismiss these claims for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

Plaintiff generally alleges in these claims that the 100-plus "Supervisory Defendants" have final policymaking authority over all of the twenty named "Commonwealth of Pennsylvania Agencies and Municipal Agencies."  However, he does not sufficiently allege which Defendants exercised authority over which agency, and, in spite of his exhaustive list of employees allegedly involved, does allege which agency each employee worked for.  Moreover, Plaintiff does not clearly articulate how these employees "conducted manipulative borough, county, and state procedures that blatantly violated state and federal constitutional standards," or, for that matter, the specific constitutional rights the employees allegedly violated.  (2nd Am. Compl. ¶ 307 (emphasis omitted); see also id. ¶¶ 311-14.)  Put simply, Plaintiff has not set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47).

We also decline to exercise our discretion to permit Plaintiff to amend these technically deficient claims because we find that permitting Plaintiff to amend these claims would prove futile under the circumstances.  See Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000) ("[A] District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile." (citations omitted)).  In both our August 13, 2008 Order and our March 20, 2009 Order-Memorandum, we instructed Plaintiff that he must fully describe how each Defendant was involved in each of his claims, and cautioned that "blanket allegations against entire groups of . . . defendants" were insufficient.  Muhammad, 2009 WL

15

637112, at *2.  Now on his third complaint, Plaintiff nevertheless continues to make blanket

allegations against tens, if not hundreds, of seemingly disparate defendants at a time.[12]   See, e.g.,

Rhett v. N.J. State Superior Court, 260 F. App'x 513, 515-16 (3d Cir. 2008) (finding that the district

court did not abuse its discretion in dismissing the plaintiff's second amended complaint without

leave to amend where "[plaintiff's] rambling pleadings contained mostly unintelligible allegations

against almost twenty seemingly disparate defendants," the second amended complaint "assert[ed]

a variety of unrelated claims, including a 'personal injury negligence' claim, a 'forgery' claim, a

claim of embezzlement,' and a claim for the refund of certain child support funds," and the court

---

[12]Plaintiff has a history of filing such sweeping complaints in federal court.  For example, in a recent action Plaintiff filed in the Eastern District of Virginia, his complaint asserted claims under the ADA, RA, Fair Housing Act, and Equal Protection Clause against more than 40 defendants, which the court characterized as "wide-ranging and . . . aris[ing] out of several different transactions with the various defendants, all involving plaintiff's dissatisfaction with the conditions in Section 8 housing administered by some of the defendants."  Sudduth v. Vasquez, Civ. A. No. 08-1106, 2009 WL 211572, at *1 (E.D. Va. Jan. 26, 2009).  In another recent action Plaintiff filed in the Central District of California, Plaintiff's amended complaint asserted claims under the FHA, ADA, and RA, as well as pursuant to § 1983, against more than 50 defendants for allegedly discriminating against him on the basis of his race, religion, and disability.  (Pl.'s Am. Compl., Docket No. 25, Sudduth v. Griffis, Civ. A. No. 08-4563 (C.D. Cal.).)  Likewise, in an action Plaintiff recently filed in the District of Maryland, Plaintiff's complaint asserted claims under the ADA, RA, FHA, and Civil Rights Act of 1964, as well as pursuant to § 1983, against more than 60 defendants.  (Pl.'s Compl., Docket No. 1, Muhammad v. Williamson-Crawl, Civ. A. No. 08-2971 (D. Md.).)

We further note that Plaintiff has extensive experience litigating civil matters pro se in the federal courts.  See generally Muhammad v. Vargas, 129 S. Ct. 53 (2008) (dismissing petition for writ of certiorari to the Court of Appeal of California and "direct[ing] [the Clerk] not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1" because "petitioner has repeatedly abused this Court's process"); Sudduth v. Sciulli, 549 U.S. 1107 (2007); Sudduth v. Rogiero, 549 U.S. 1082 (2006); Sudduth v. City of Pittsburgh Comm'n on Human Relations, 547 U.S. 1073 (2006); Sudduth v. Martinez, 543 U.S. 888 (2004); Sudduth v. Ohio State Univ., 543 U.S.834 (2004); Sudduth v. Strassburger, 542 U.S. 907 (2004); Sudduth v. City of Pittsburgh, 535 U.S. 1061 (2002); Sudduth v. Ohio State Univ., 85 F. App'x 874 (Table) (3d Cir. 2003); Sudduth v. Strassburger, 85 F. App'x 874 (Table) (3d Cir. 2003); Sudduth v. Univ. of Pittsburgh, 908 F.2d 964 (Table) (3d Cir. 1990); Sudduth v. Baer, 65 F. App'x 875 (Table); Sudduth v. Donnelly, Civ. A. No. 08-4227, 2009 WL 918090, at *1 (N.D. Ill. Apr. 1, 2009); Martinez v. Sudduth, Civ. A. No. 03-879, slip op. (W.D. Pa. June 19, 2003), appeal summarily dismissed, Martinez v. Sudduth, C.A. No. 03-3361, slip op. (3d Cir. Feb. 17, 2004); Sudduth v. Experian Info. Solutions, Inc., Civ. A. No. 98-1204, 1999 WL 34809639, at *1 & n.1 (W.D. Pa. 1999); Sudduth v. Allegheny Valley, Civ. A. No. 95-1479, slip op. (W.D. Pa. Oct. 3, 1995).

"provided [the plaintiff] with clear directions as to what must be included in a proper complaint" when it dismissed the prior two complaints).

Moreover, to the extent that Plaintiff has asserted new claims in the Second Amended Complaint arising out of acts or omissions occurring outside this District, he has failed to heed the instruction in our March 10, 2009 Order-Memorandum to "reassess the important venue questions raised by this case and determine which judicial district (or districts) provide the proper venue for his claims." Muhammad, 2009 WL 637112, at *1. Consequently, we decline to exercise our discretion to give Plaintiff leave to amend his Monell claims, and dismiss them pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

E.      "Supervisory Violations" Claims

In his fifth cause of action, Plaintiff brings "supervisory violation" claims pursuant to § 1983 against the "Supervisory Defendants." The gravamen of this claim is that the "Supervisory Defendants" "acted recklessly or with deliberate indifference when they placed [their subordinates] in key positions within [their respective agencies]." (2nd Am. Compl. ¶ 321.) This claim appears to be duplicative of one of Plaintiff's Monell claims, in terms of both its substance and technical deficiencies. Consequently, we dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without leave to amend, for the reasons discussed above regarding Plaintiff's Monell claims.

F.      Conspiracy under § 1983

In his sixth cause of action, Plaintiff alleges, pursuant to § 1983, that the Defendants involved in the litigation over his 2004 car accident in Allegheny County "conspired . . . to deprive [him] of his constitutional rights by having his Pennsylvania Driver's License unlawfully revoke[d] due to

bogus accusations that [he] has a medical condition that affects his ability to drive."[13]   (2nd Am. Compl. ¶ 327 (emphasis omitted).)  Specifically, Plaintiff alleges that these Defendants "criminally and fraudulently informed [PennDOT] that there were medical reports that stated that [he] was unable to operate a motor vehicle safely" (id. ¶ 328 (emphasis omitted)), and that any such reports were "completely bogus and . . . fraudulent" because he never saw a physician about any vision deficiency.  (Id. ¶¶ 329-30 (emphasis omitted).)  Plaintiff alleges that, as a result of Defendants' action, he "was deprived of his rights under the Fourteenth Amendment . . . ."  (Id. ¶ 335.)  We dismiss these claims as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and as improperly venued, pursuant to 28 U.S.C. § 1406(a).

"In order to state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  Eichelman v. Lancaster County, 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007) (citing Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)).  Broadly construing the Second Amended Complaint, Plaintiff has failed to allege facts that, if proven, would establish a deprivation of his civil rights in furtherance of a state-action conspiracy.  Significantly, a person does not have a constitutional right to a driver's license.  See Banks v. Bickley, Civ. A. No. 05-600, 2005 WL 1138461, at *2 (M.D. Pa. Apr. 27, 2005) (citing Miller v. Reed, 176 F.3d 1202, 1206 (9th Cir. 1999); see generally John Doe No. 1 v. Ga. Dep't of Pub. Safety, 147 F. Supp. 2d 1369, 1375 (N.D. Ga. 2001) (citing cases).  Rather, the state must only afford

---

[13]The Defendants for this claim include Defendants Weis, Irvin, McAuley, Cramer, Points, Wile, Kuhar, Rapach, Biehler, Dolan, Bickley, Rust, Swick, Cross, Zidek, Michini, Patterson, Mullin, M. Rogiero, L. Rogiero, Gannon, State Farm Insurance, Pennsylvania Department of Transportation, Law Offices of Wayman, Irving, and McAuley, the "Supervisory Defendants" and John/Jane Does. (2nd Am. Compl. ¶ 325.)

a person due process when suspending or revoking his or her driver's license.  See Mackey v. Montrym, 443 U.S. 1, 10 n. 7 (1979) (citing Dixon v. Love, 431 U.S. 105, 112 (1977); Bell v. Burson, 402 U.S. 535, 539 (1971)).

Here, Plaintiff does not allege that PennDOT's revocation of his driver's license occurred after receiving fraudulent information from the other Defendants, let alone that it revoked the license without affording him due process and *as a result* of the fraudulent information.  Indeed, the core of Plaintiff's conspiracy claim involves merely the transmittal of allegedly fraudulent information about him by ostensibly private actors to a government agency, which alone does not constitute a constitutional violation.  Consequently, this claim is frivolous.

Finally, we note that none of the factual allegations supporting this claim involve acts or omissions that occurred in this District.  Accordingly, we dismiss this claim as both frivolous and improperly venued.

G.      § 1985(2) Obstruction of Justice and § 1985(3) Conspiracy Claims

In his seventh cause of action, Plaintiff asserts an obstruction of justice claim pursuant to 42 U.S.C. § 1985(2) against all Defendants, for "obstruct[ing] [him] from receiving any chance of a fair trial and/or hearing within Pennsylvania's corrupt and racist state courts, due to [his] religion, race, and disabilities."  (2nd Am. Compl. ¶ 339 (emphasis omitted).)  In his eighth cause of action, Plaintiff asserts a conspiracy claim pursuant to 42 U.S.C. § 1985(3) against all Defendants for conspiring to deprive him "either directly or indirectly . . . of the equal protection of the laws and of their equal privileges and immunities under the law."  (Id. ¶ 347.)  We dismiss both claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without leave to amend, for the reasons discussed above with respect to Plaintiff's Monell claims.

19

H.    "Negligent Supervision" Claims

In his ninth cause of action, Plaintiff alleges that the "Supervisory Defendants" within the Millvale Police Department and Allegheny County Sheriff's Office breached their "duty to use due care in hiring, training, supervision, discipline, and retention" of their personnel.  (2nd Am. Compl. ¶¶ 352-55.)  Broadly construing the complaint, we characterize this cause of action as another Monell claim.  We nevertheless dismiss Plaintiff's claim against the Millvale Police Department Defendants as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), because, as we discussed above with respect to Plaintiff's malicious prosecution and unlawful seizure claims, the two-year statute of limitations has run.   We further dismiss Plaintiff's claim against the Allegheny County Sheriff's Office Defendants without leave to amend, pursuant to 28 U.S.C. § 1406(a), as the acts or omissions giving rise to the claim occurred exclusively in Allegheny County.

I.    First Amendment Claim

Plaintiff brings his tenth and final claim, pursuant to the First Amendment, the ADA, Section 504 of the RA, and the PHRA, against Defendants Conroy, Rangos, Wecht, DeFazio, Mullen, Allegheny County Sheriff's Office, City of Pittsburgh, Allegheny County, Commonwealth of Pennsylvania, Pines, Butler, Administrative Office of Pennsylvania Courts, and Pennsylvania Unified Judicial System.  Plaintiff alleges that, "on numerous dates and times from the year 2004 through . . . 2008," Defendants Conroy, Rangos, Wecht, and John/Jane Does "requir[ed] [him to] remove his hat a/k/a 'kufi', [sic] whenever he was present in their totally corrupt courtrooms."  (2nd Am. Compl. ¶ 358 (emphasis omitted).)  Plaintiff further alleges that these Defendants, as well as their staff, "would summon[] the Defendants . . . DeFazio, Mullen and their deputies . . . in order to unlawfully harass; taunt and verbally abuse [him] and have [him] removed from their totally corrupt

and racist courts, by force . . . ."  (2nd Am. Compl. ¶ 360 (emphasis omitted).)  For the following

reasons, Plaintiff's claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1406(a).

Broadly construing the complaint, the gravamen of this claim is religious discrimination in

violation of the First Amendment.  Consequently, the ADA and RA provide no remedy, as those

statutes prohibit discrimination solely on the basis of disability, not religion.  Moreover, Plaintiff

appears to be foreclosed from pursuing his claim under the PHRA because he has not alleged that

he filed a complaint with the Pennsylvania Human Rights Commission.  See Woodson v. Scott Paper

Co., 109 F.3d 913, 925 (3d Cir. 1997) ("Pennsylvania courts have strictly interpreted [the PHRA

administrative requirements] and repeatedly held that 'persons with claims that are cognizable under

the Human Relations Act must avail themselves of the administrative process of the Commission

or be barred from the judicial remedies authorized in Section 12(c) of the Act.'" (quoting Vincent

v. Fuller Co., 532 Pa. 547, 616 A.2d 969, 974 (Pa. 1992)).

Even if we were to construe this claim as one of religious discrimination brought under §

1983, we would still dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B).  Plaintiff cannot pursue a §

1983 claim against Defendants Commonwealth of Pennsylvania, Administrative Office of

Pennsylvania Courts, and Pennsylvania Unified Judicial System as they are not "persons" within the

meaning of § 1983 and are immune from suit under the Eleventh Amendment.  See Will v. Michigan

Dep't of State Police, 491 U.S. 58, 64 (1989); Laskaris v. Thornburgh, 661 F.2d 23, 25-26 (3d Cir.

1981); see, e.g., Briggs v. Moore, 251 F. App'x 77, 79 (3d Cir. 2007) (finding that the New Jersey

Superior Court is not a "person" for § 1983 purposes (citing Will, 491 U.S. at 70-71).  Consequently,

we dismiss his claim against these Defendants as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)

and (iii).

Plaintiff also cannot pursue a § 1983 claim against Defendants Conroy, Rangos, and Wecht, because, as judges, they generally enjoy absolute judicial immunity from suits over acts or omissions taken in their judicial capacity.  See Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).   Whether an act is judicial depends on both the nature and the function of the act, rather than the act itself.  Mireles, 502 U.S. at 13 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)).  "Maintaining order in a judicial or quasi-judicial proceeding is an integral part of the judicial function," Sager v. Adamson, Civ. A. No. 08-5463, 2008 WL 4181599, at *2 (W.D. Wash. Sept. 8, 2008) (citing Mireles, 502 U.S. at 10-13), and "[a] judge acts in his judicial capacity when he exercises control over his courtroom, and by extension, when he bars a litigant or attorney from the courtroom."  Id. (citing Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994); Sheppard v. Maxwell, 384 U.S. 333, 358 (1966)).  Here, the Defendant judges allegedly violated Plaintiff's First Amendment rights by requiring him to remove his kufi when appearing as a litigant in their courtrooms and by having him removed from their courtrooms when he would not comply with their orders.  Accordingly, we find that these acts were judicial in nature and that the Defendant judges generally enjoy absolute immunity from suit.

We recognize that the 1996 amendment to § 1983 permits a plaintiff to obtain prospective, injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . [if] a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; see also Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 197-98 (3d Cir. 2000). However, Plaintiff has not alleged that the Defendant judges violated a declaratory decree or that declaratory relief is otherwise unavailable, and therefore may not obtain injunctive relief against them. See Catanzaro v. Cottone, 228 F. App'x 164, 167 (3d Cir. 2007) (per curiam) (citing Azubuko

v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006)).

Moreover, to the extent that Plaintiff seeks declaratory relief against the Defendant judges, he does not do so "in the true legal sense," Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) (citations omitted), as he asks the Court merely to "declare[] that all of the . . . Defendants violated [his] rights . . . to the equal protection of laws guaranteed by the Fourteenth Amendment" as well as his "rights to be free from discrimination under Title VI of the Civil Rights Act of 1964."[14]  (2nd Am. Compl. at 66-67.)  "Declaratory judgment is inappropriate solely to adjudicate past conduct . . .[,] [n]or is declaratory judgment meant simply to proclaim that one party is liable to another."  Corliss, 200 F. App'x at 84 (citing Gruntal & Co., Inc. v. Steinberg, 837 F. Supp. 85, 89 (D.N.J. 1993); Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (en banc)).  Accordingly, Plaintiff's claims against Defendants Conroy, Rangos, and Wecht are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

We likewise dismiss Plaintiff's claims against Defendants DeFazio, Mullen, and their deputies, for enforcing the Defendant judges' orders and removing Plaintiff from their respective courtrooms, as judicial immunity extends to sheriff's deputies when they act "'under direct judicial supervision.'"  Tyson v. Damore, Civ. A. No. 03-5297, 2004 WL 1837033, at *6 (E.D. Pa. Aug. 13, 2004) (quoting Snyder v. Fleming, 102 F. Supp. 2d 592, 596 (M.D. Pa. 2000)); see also Hazo v. Geltz, 537 F.2d 747, 750 (3d Cir. 1976) ("[I]f a 'defendant is directly involved in the judicial process, he may receive immunity in his own right for performance of a discretionary act or he may be covered by the immunity of the judge because he is performing a ministerial function at the

---

[14]Plaintiff makes several fleeting references to Title VI of the Civil Rights of 1964, but does not assert any claims pursuant to Title VI.

direction of the judge.'" (quoting <u>Waits v. McGowan</u>, 516 F.2d 203, 206 (3d Cir. 1975))).  Here, Plaintiff plainly alleges that DeFazio, Mullen, and their deputies were "summoned" by the Defendant judges "in order to unlawfully harass; taunt and verbally abuse [him] and have [him] removed" from their courtrooms.  (2nd Am. Compl. ¶ 360 (emphasis omitted).)  Consequently, these Defendants were acting pursuant to judicial orders, were directly involved in the judicial process, and are cloaked with judicial immunity.  We therefore dismiss Plaintiff's claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

Finally, we dismiss Plaintiff's claim against Defendants Pine, Butler, City of Pittsburgh, and Allegheny County, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), without prejudice and without leave to amend.  Plaintiff does not sufficiently allege how these Defendants were involved in the alleged violation of his First Amendment rights. In any event, all acts or omissions pertinent to this claim ostensibly occurred outside this District, in Allegheny County, thereby justifying dismissal pursuant to 28 U.S.C. § 1406(a).

## IV.    CONCLUSION

For the foregoing reasons, we retain jurisdiction over Plaintiff's ADA and RA claims against the Pennsylvania Department of Insurance, and transfer his ADA and RA claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, the Pennsylvania Supreme Court to the Western District of Pennsylvania.  All of

Plaintiff's remaining claims are dismissed.  An appropriate Order follows.


BY THE COURT:



___/s/ John R. Padova_____
John R. Padova, J.