IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKHI RAHEEM MUHAMMAD, | ) | Civil Action No. 2:09- 1255 |
| *Plaintiff,* | ) | |
| v. | ) | Judge Joy Flowers Conti/ |
| | ) | Chief Magistrate Judge Lisa P. Lenihan |
| COURT OF COMON PLEAS OF | ) | |
| ALLEGHENY COUNTY, PA, *et al.,* | ) | [ECF No. 94] |
| *Defendants.* | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Pending is a Motion to Dismiss [ECF No. 94] filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) with respect to claims made against Defendants, the Court of Common Pleas of Allegheny County, Pennsylvania, the Pennsylvania Commonwealth Court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § §12101, et seq.; and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 791 et seq. "Challenges for failure to state a cause of action ordinarily should be made under Rule 12(b)(6)." Kehr Packages, Inc., v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1946) (citing Bell v. Hood, 327 U.S. 678,682 (1946)). "Dismissal is proper under Rule 12(b)(1) only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" Id. at 1408-09 (quoting Bell, 327 U.S.

at 682).[1]  This Court's recommends that that the Plaintiff's Second Amended Complaint be assessed for legal sufficiency under Rule 12(b)(6), and dismissed for failure to state a claim.

## II.  REPORT

### A.  Background[2]

The Plaintiff, Akhi Haheem Muhammed ("Muhammed" or "the Plaintiff"), is an adult Muslim African -American who contends that he suffers from diabetes and associated vision problems which make it difficult for him to read small print.  On July 30, 2008, the Plaintiff, who was incarcerated, acting pro se, and proceeding in forma pauperis, filed suit in the District Court for the Eastern District of Pennsylvania ("the District Court") pursuant to 42 U.S.C. §§ 1983 and 1985, and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. §§ 951 et seq., alleging violations of a panoply of constitutional rights, as well as rights guaranteed to him by Title II of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("the RA"), 29 U.S.C. § 794(a).  [ECF No. 88 at 1].  His original Complaint, which named 111 state defendants in their official capacities, was dismissed with leave to amend, because it failed to specify the role of the individual defendants in the claims made against them.  [Id. at 2].

In September 2008, the Plaintiff filed an Amended Complaint [ECF No. 4] "which suffered from many of the same inadequacies as the original" and added claims pursuant to section1983 alleging transgression of his First, Seventh, Ninth, Tenth, and Fourteenth

---

[1] The screening conducted by the District Court for the Eastern District of Pennsylvania has already established that the claims now before this Court are not wholly insubstantial or frivolous.

[2] The historical and procedural facts set forth here track those recounted in the Memorandum [ECF No. 88] written by District Judge Padova in the matter captioned Muhammad v. Weis, Civ. Action No 08-3616 (E.D. Pa. Aug. 17, 2009).  Pursuant to the Order [ECF No. 89] accompanying the Memorandum, the claims now under consideration were transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406(a), and the single claim remaining in the Eastern District of Pennsylvania was dismissed on summary judgment.

Amendment rights. [Id.]. A Second Amended Complaint [ECF No. 67] was filed in June 2009. Having reviewed it, the District Court for the Eastern District of Pennsylvania wrote:

> Although [it] fill[ed] in many of the factual gaps in [the] previous complaints, it span[ned] nearly 70 pages (more than triple the length of the First Amended Complaint), name[d] more than 200 defendants, assert[ed] more than a half-dozen new causes of action, and describe[d] events wholly unrelated to those alleged in previous complaints. From our reading, we discern at least seven, [sic] discrete series of transactions that form the basis of Plaintiff's myriad claims, including: (1) a 2004 automobile accident in Pittsburgh and related litigation in Allegheny County from 2004 to 2007; (2) the issuance of two traffic citations in Millvale, Pennsylvania in 2005, and related litigation in Allegheny County from 2005 to 2007; (3) a legal malpractice lawsuit initiated in Allegheny County in July 2005, and related litigation there from 2005 to 2007; (4) a second legal malpractice lawsuit initiated in Allegheny County in September 2005 and related litigation there from 2005 to 2008; (5) the revocation of Plaintiff's car insurance and related litigation from 2007 to 2008; (6) the forced removal of Plaintiff's kufi, a religious head covering, at legal proceedings in the courtrooms of various Allegheny County judges, named Defendants, between 2004 and 2008; and (7) a 2009 lawsuit against Allegheny County Adult Probation and Parole over money Plaintiff paid them to secure the release of his incarcerated nephew.

[ECF No. 88 at 2-3] (footnote and internal record citations omitted). Based on these events, the Plaintiff asserted ten causes of action, including ADA claims against all of the more than two hundred governmental entities and employees. The District Court, as it was bound to do, screened the Plaintiff's Second Amended Complaint in accordance with the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, ¶¶ 801-810,110 Stat. 1321 -66 to 1321-77 (1996). In that Act, Congress mandated the screening of claims and made other major changes affecting civil rights actions brought by prisoners. It did so in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Morales v. Beard, No. 09-162,

2009 WL 2413425 at *3 (W.D. Pa. July 31, 2009) (quoting <u>Santana v. United States,</u> 98 F.3d 752, 755 (3d Cir.1996)).[3]

According to the District Court, the only viable claims left following screening of the Second Amended Complaint were the ADA Title II and RA claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance.[4] The District Court concluded that these claims were not frivolous or malicious, and that the allegations supporting each were adequate to state a claim.[5] At the same time, the Court found that venue as to the claims against the Pennsylvania Department of Insurance lay in the Eastern District, but, as to the remaining Defendants, venue was proper only in the Western District of Pennsylvania. Consequently, the ADA and RA claims against the Pennsylvania state courts were severed and transferred to this Court pursuant to 28 U.S.C. § 1406(a).[6]

**B. Standard of Review**

A motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not predicting whether the plaintiff will prevail on the merits; rather, the

---

[3] Because the Plaintiff was incarcerated at the time he filed this action, and was granted in forma pauperis status, [ECF No. 1], the screening provisions of 28 U.S.C. § 1915(e)(2), applied to his case.

[4] The remaining claims were dismissed pursuant to provisions of 28 U.S.C. §1915(e)(2) (i-iii). Section 1915 (e)(2)(b)(i) permits a district court to dismiss <u>sua sponte</u> any claims determined to be "frivolous or malicious." Section 1915(e)(2)(B)(ii) allows the Court to dismiss portions of the Complaint that fail to state a claim upon which relief may be granted," and subsection (iii) permits the District Court to dismiss claims "seeking monetary relief against a defendant who is immune from such relief."

[5] The standard applied in evaluating a claim pursuant to Section 1915(e)(2)(B)(ii) is identical to standard governing a motion to dismiss made under Fed. R. Civ. P. 12(b)(6).

[6] This section provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

4

court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Exp. Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it must provide more than labels and conclusions. Twombly, 550 U.S. 544 at 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). Factual allegations must be enough to raise a right to relief above the speculative level; they must state a claim for relief that is plausible on its face. Id.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility is not a "probability requirement at the pleading stage" but it requires more than the sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, ___ U.S.____, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a claim's elements, supported by mere conclusory statements. Id. at 1949-50. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

A court considering a motion to dismiss may begin by identifying allegations that are mere conclusions and not entitled to the assumption of truth. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

**C.  Discussion**

    1.    Does this Court Have the Authority to Dismiss the Transferred Claims Pursuant to Fed. R. Civ. P. 12(b)(6)?

*Law of the case*

This Court has carefully reviewed the allegations set out in the Second Amended Complaint and, for the reasons detailed later in this Report and Recommendation, finds that they do not state a cause of action under either the ADA or the RA. In so finding, the Court recognizes that its conclusion differs from that of the District Court for the Eastern District following screening pursuant to 28 U.S.C. § 1915A. Although at first blush, it might seem that this contradiction runs counter to the law of the case doctrine, it does not.

"The law of the case doctrine reflects courts' general reluctance to reconsider matters soundly decided." Falor v. G & S Billboard, Civil Action No. 04–2373, 2008 WL 5190860, at *2 (D.N.J. Dec. 10, 2008), and "is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." In re City of Philadelphia Litig. 158 F.3d 711, 717–18 (3d Cir.1998). "[W]hen a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." Matter of Resyn Corp., 945 F.2d 1279, 1281 (3d Cir.1991) (citations omitted). Notably, this doctrine "is a rule that is subject to the discretion of the court applying it." Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co., 988 F.2d 414, 429 (3d Cir.1993).

"The law-of-the-case doctrine does not limit the jurisdictional power of trial judges to reconsider issues previously decided by a predecessor judge . . . , but it does recognize, as a matter of comity, that a successor judge should not lightly overturn the decision of his predecessor in a given case." United States v. Wecht, 619 F.Supp. 2d 213, 222 (W.D. Pa. 2009) (citing Fagan v. Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994)(citations omitted))."' Thus, the "law of the case" doctrine is purely prudential. See, e.g., Swietlowich v. Bucks County, 610 F.2d 1157, 1164 (3d Cir. 1979) (A judge "has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result.") If the District Court has discretion to reconsider its conclusion with respect to whether the Plaintiff stated a claim under the ADA or the RA, it would be illogical to conclude that this Court may not do the same where it finds that those claims lack merit, and that allowing them to proceed would be both inequitable and wasteful.

*Can a claim be dismissed pursuant to Rule 12(b)(6) after it survives screening?*

The short answer to this question is "yes." A screening has no preclusive effect with respect to whether a motion to dismiss may be granted thereafter. See, e.g., Cusamano v. Sobek, 604 F. Supp. 2d 416, 435 n. 29 (N.D.N.Y. 2009). There, the Court wrote:

> Some courts find it appropriate to expressly explain that a court's initial review, and acceptance, of a complaint during the "screening" process conducted pursuant to 28 U.S.C. § 1915A does not preclude a later dismissal of that complaint under Fed.R.Civ.P. 12(b)(6); however, this rule applies in pro se prisoner civil rights cases regardless of whether a court recites it. See, e.g., Morales v. County of Westchester, 97–CV–0498, 1997 WL 32985, at *2 (S.D.N.Y. Jan. 23, 1997) ("Nothing herein shall preclude these defendants from making any ... motion to dismiss the complaint as may be appropriate."). It is worth noting that at least one court has found that the court's denial of a defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not even preclude a later dismissal under 28 U.S.C. § 1915(e)(2)(B). See Athans v. Starbucks Co., 06–CV–1841, 2007 WL 1673883, at *1

7

> (D. Ariz. June 11, 2007) ("The Court's previous ruling [deciding not to dismiss the plaintiff's claims under Fed.R.Civ.P. 12(b)(6) ] does not preclude a finding under § 1915 that this action is frivolous."); see also Athans v. Starbucks Co., 06–CV–1841, Order, at 5–7, 2007 WL 899130 (D. Ariz. filed March 23, 2007) (denying, in part, defendant's motion to dismiss under Fed.R.Civ.P. 12[b][6] ).

Having concluded that there is no bar to this Court's consideration of the pending Motion, the Court, with the standard governing motions to dismiss firmly in mind, turns to the transferred claims.

*Transferred claims and the governing statute of limitations*

Neither the ADA nor the RA specifies a governing statute of limitations. Thus, the applicable limitations period under each "is determined by looking to the limitations period for the most analogous cause of action in the state in which [the court hearing the claims] sits." Datto v. Harrison, 664 F. Supp.2d 472, 482 (E.D. Pa. 2009)(citing Disabled in Action of Pa. v. S.E. Pa. Trans. Auth., 539 F.3d 199, 208 (3d Cir. 2008)( specifying that "applicable statute is 42 PA. CONS.STAT. § 5524, which prescribes a two-year statute of limitations"). The pending matter was filed on July 30, 2008. Thus, absent any applicable exception to the rule, any claim made by Muhammad against the Pennsylvania courts that accrued prior to July 30, 2006 is time-barred. A cause of action accrues "when the first significant event necessary to make the claim suable occurs." Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000).

The Plaintiff attempts to save his time-barred allegations by alleging that the Defendants engaged in a continuing violation. In his brief opposing the Motion to Dismiss [ECF No. 99], Muhammad contends that "he has been filing suits against [these Defendants] . . . since the year of 2000 because of [their] continuous and relentless total disregard for [his] . . . disability rights." (emphasis omitted) [Id. at ¶ 6]. He goes on to state that as "illustrated in the

8

NUMEROUS civil complaints that has [sic] been filed by this Plaintiff [against] the Court of Common Pleas of Allegheny County, Pennsylvania, the Commonwealth Court of Pennsylvania; the Superior Court of Pennsylvania, [and] the Supreme Court of Pennsylvania, . . . these . . . Defendants continues [sic] to . . . deny this Plaintiff his . . . disability rights . . . since the year of 2000 through the year of 2011." [Id. at ¶8]. In the Title VII context, the Court of Appeals for the Third Circuit has identified a number of factors to be considered in identifying a continuing violation, including, perhaps most importantly, the degree of permanence: "Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert [his] or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (quoting Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir.1983)). In other words, the continuing violation doctrine does not apply where a discriminatory act occurring more than two years before suit was filed was serious enough that a reasonable person should have realized that he had a substantial claim.

At ¶ 85 of his Second Amended Complaint, the Plaintiff alleges that he has been requesting the "aforementioned 'reasonable accommodations' from [the state court Defendants] during the past twenty (20) plus years and they all had [sic] repeatedly and wrongfully denied [his] requests due to [his] religion, race and disabilities." (emphasis omitted). Muhammad has, indeed, proved himself to be a prodigious litigator. In the Memorandum Opinion dismissing all claims except the one retained in the Eastern District and those transferred here, the Court stated that "Plaintiff has a history of filing . . . sweeping complaints in federal court." [ECF No. 88 at n. 12]. The Court then cited some twenty cases, many of which raised ADA and RA claims, in

9

multiple districts against dozens of defendants. In his brief opposing the pending Motion to Dismiss, Muhammad alleges that "he has successfully been practicing law on his own behalf for well over twenty years and **ALL** the aforementioned Defendants and their aforementioned attorneys have been unlawfully and illegally this **Pro Per Plaintiff** full and unrestricted access to **their** state courts for the past twenty years due entirely to the Plaintiff's Religion Islam; the Plaintiff's Race: African-American and the Plaintiff's Physical Disabilities that consists [sic] of being both Visually Impaired and Mobility Impaired [sic]." [ECF No. 99 at 3,4] (emphasis in original). [7]

Given the breadth of his experience litigating reasonable accommodation claims, it is disingenuous for the Plaintiff to attempt to skirt the governing statute of limitations by arguing that he did not realize that the discrimination that occurred prior to July 2006, was actionable.

As the District Court noted, at least seven discrete series of transactions gave rise to the Plaintiff's current claims against the State Court Defendants. [ECF No. 88 at 2]. The first was a 2004 automobile accident in Pittsburgh and litigation stemming from that accident. The District Court detailed the ADA and RA claims made against these Defendants in connection with that litigation in order to illustrate its finding that the continuing violations doctrine does not apply to resurrect barred claims.

On April 5, 2004 Plaintiff filed suit in the Court of Common Pleas for Allegheny County relating to a 2004 automobile accident. [ECF No. 67 at 114]. At a June 4, 2004, hearing on the Defendants' Preliminary Objections to the Plaintiff's suit, Muhammad requested from the Court of Common Pleas "reasonable accommodations" in the form of either a "CCTV and/or a CRT-TV and/or Some Type of Electronic Device that would enlarge small print . . . ." These requests were wrongfully denied. [Id. at ¶¶ 124-25]. Muhammad requested and was denied reasonable

---
[7] This is the first and only time in this litigation that Muhammad mentions a mobility impairment.

accommodations in connection with an August 11, 2004 hearing on a Motion for Disqualification, a Motion for Sanctions; a Motion to Continue [Id. at ¶¶126-27]; an October 1, 2004 hearing on a Motion to Compel Discovery [Id. at 128]; an October 15, 2004 Motion for Protective Order [Id. at 130]; an October 22 hearing on Motions to Quash, for Sanctions, to Vacate, and to Compel. [Id. at 134-36]; a November 12 hearing on a Motion to Vacate [Id. at ¶¶136-37]; a December 3 hearing on a Motion to Vacate [Id. at ¶¶138-39]; a December 9 hearing on a Motion to Compel Discovery [Id. at ¶142-43]; an April 22 hearing on a Motion to Compel Discovery [Id. at ¶¶ 144-45]; and a June 13 arbitration hearing [Id. at 147-48]. Muhammad also alleges that when the arbitration failed to conclude in his favor, he requested and was denied a certified copy of the record. [Id. at ¶152].

Muhammad acknowledges that the Superior Court of Pennsylvania granted his accommodation request by allowing him to argue his case on appeal and providing special equipment at the oral argument on September 26, 2005. [Id. at ¶154]. Confusingly, the Plaintiff then alleges that the Superior Court of Pennsylvania wrongfully denied his requests for reasonable accommodations and for oral argument on September 26, and wrongfully quashed his appeal, due in part to his disabilities. [Id. at ¶155].

Next, the Plaintiff argues that his appeal to the Pennsylvania Supreme Court was compromised when the Court failed to grant his request for a small-print reader to allow him to prepare his Petition for Allowance of Appeal. Similar allegations pertinent to this litigation continued throughout the remaining phases of this litigation, which was ongoing when the federal suit now under consideration was filed.

Muhammad's RA and ADA allegations made in connection with litigation rooted in the the remaining transactions – the issuance of traffic citations in Millvale in 2005, two separate

11

legal malpractice suits initiated in Allegheny County in 2005, the revocation of his car insurance in 2007, and a dispute with Allegheny County Adult Probation and Parole- are, in all substantive respects, identical to those made in connection with litigation over the 2004 car accident – the plaintiff was denied help reading small print. The Court has carefully and repeatedly reviewed all of these allegations, and does not find any ground upon which to invoke the continuing violations doctrine. Each refusal to provide the Plaintiff with the accommodations to which he claims entitlement was a complete and independent act. Muhammad, especially given his familiarity with litigating claims made under these statutes, needed no additional information to make him aware that he had suffered an actionable injury each time the requested accommodations were denied. The fact that these requests were denied repeatedly in the context of different motions, hearings, and appeals occurring within the same litigation did not relieve him of the responsibility to file a claim at the time he should have first realized that his rights had been infringed. The Court thus finds that each of the Plaintiff's accommodation claims occurring before July 30, 2006 is barred by the statute of limitations, and is not tolled by the continuing violations doctrine.

*Failure to state a claim under Federal Rule of Civil Procedure 12 (b)(6)*

"The Supreme Court has recognized that Title II [of the ADA] prohibits 'a somewhat broader swath of conduct' than the Constitution itself forbids." Allen v. Morris, No. 493-cv-00398, 2010 WL 1382112 at *7 (E.D. Ark. Jan. 6, 2010) (quoting United States v. Georgia, 546 U.S. 151, 157 (2006)). "The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability." Iseley v. Beard, No. 05-2108, 2006 WL 2806985 at *4 (3d Cir. October 3, 2006). The RA is similar to the ADA in all but one critical respect; it contains the additional requirement that the plaintiff show that the program or

activity from which he is excluded receives federal financial assistance.[8] See Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 204 (3d Cir. 2001).

In order to survive a Motion to Dismiss a Title II claim, a plaintiff bears the burden of alleging *facts* sufficient to establish his contentions that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132; Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007)." Lopez v. Beard, No. 08-3699, 2009 WL 1705674 at *4 n.1 (3d Cir. June 18, 2009) (footnote added) (emphasis added). See also Schonfeld v. Carlsbad, 978 F. Supp. 1329, 1334 (S.D. Cal. 1997) (reiterating that burden of proof as to each element of Title II claim lies with the plaintiff).

This case involves an alleged failure to accommodate. Under Title II, "the failure of a public entity to provide disabled persons with *reasonable* modifications constitutes discrimination within the meaning of the act." Muhammad v. Dept. Of Corr., 645 F. Supp. 2d 299, 313 (D. N.J. 2008) (emphasis added) (citing Townsend v. Quasim, 328 F.3d 511, 517 (9th Cir. 2003)). See also 28 C.F.R. § 35.130 (b) (7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability"). Under the ADA, "a determination of whether a

---

[8] The Plaintiff has made a bare –bones allegation that the Defendants in this matter receive federal funds. He has not, however, asserted facts in support of this allegation, and there is reason to doubt it. See Kapner v. Superior Court of Pennsylvania, Civ. A. No. 87-2958, 19897 WL 15425 at *2 (E.D. Pa. August 5, 1987), where the Court wrote: "[N]either anything in the complaint and supporting documentation, nor anything within the ambit of this court's judicial notice, offers a basis for the inference that either the Court of Common Pleas or the Superior Court is a 'program or activity receiving Federal financial assistance . . . .' In short, [the] federal claim has no statutory foundation."

particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995).

In analyzing this accommodation claim, we turn first to the Plaintiff's alleged disability. He contends that he "suffers from the disease, diabetes and its many complications." [ECF No 67 at ¶ 13 ] (emphasis omitted), and that he is "'visually impaired'" with regards to being able to view 'small print'" [Id. at ¶44]. Muhammad asserts that, in 1990, he was found to be permanently disabled within the meaning of the Social Security Act due to a visual impairment affecting one or more of his major life activities. [ECF No. 67-1 at ¶¶ 264-65]. At the same time, though, the Plaintiff alleges that he has not consulted a doctor for his vision-related problems since 2000. He does not allege that he had trouble or required assistance preparing the many pleading in this case, or that his vision problems affect other critical aspects of his life. Although the Court has doubts about the degree of the Plaintiff's vision impairment, it finds, for purposes of the pending Motion, that Muhammad's allegations are sufficient to meet the first element of his prima facie case.

The Court next addresses Muhammad's contention that he was either excluded from participation in or denied the benefits of the courts' programs, or activities as a result of the failure to accommodate his disability. Even reading the Plaintiff's pro se complaint in the most generous light possible in view of his pro se status, the Court finds that Muhammad has failed to satisfy this element of his ADA claim. First, the Plaintiff has failed to allege facts establishing that litigation in the state courts constitutes a program or activity within the meaning of the ADA. Furthermore, although he contends that he was denied access to specific pieces of vision-enhancing equipment on multiple occasions, he fails to allege facts establishing that the absence of this equipment was unreasonable in the circumstances, or that it impaired his ability to litigate

effectively. Other allegations in the Second Amended Complaint cast doubt on likelihood of either. In his brief opposing the pending Motion, Muhammad alleges that "he has *successfully* been practicing law on his own behalf for well over twenty years." [ECF 99 at ¶3] (emphasis added). He does not allege that he required or requested help in this other litigation, or in drafting the Complaints and other pleadings in this matter.

The regulation governing reasonable accommodations, 28 C.F.R. § 35.130(b)(7), requires that accommodations be provided only "when the modifications are necessary to avoid discrimination on the basis of disability." Muhammad does not describe how his visual disability disadvantaged him during the course of the relevant proceedings. In fact, many of the aspects of the litigation in which he asked for accommodation did not involve reading small print. See e.g., Muhammad's request for special equipment in connection with Motions to Quash, for Sanctions, to Vacate, and to Compel; [id. at 134-36]; and a second Motion to Vacate [id. at ¶¶136-37]. Muhammad does not allege facts showing that denial of the requested accommodations at these proceedings was unreasonable, or that their absence affected the outcome of any of the litigation. See Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir. 1999). Thus, Muhammad cannot establish the second element of his ADA claim - that he was either excluded from participation in or denied the benefits of the courts' services, programs, or activities. This is because, according to his own allegations, he participated in multiple pieces of litigation from beginning to end. Even more problematic for purposes of the pending Motion is the fact that each of Muhammad's requests for accommodation was raised before and denied solely on the basis of decisions made by judges serving on the defendant Courts. Absolute judicial immunity insulates judges in the performance of normal judicial

functions and in exercising control over the courtroom while court is in session. See e.g., Mireles v. Waco, 502 U.S. 9 (1991); Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001). A judge acts in his or her judicial capacity in refusing to accommodate an impaired defendant. Id. Moreover, Muhammad has failed to articulate any theory that would impose liability on the Courts as institutional defendants. Consequently, the Court finds that he has failed to satisfy the second element of his prima face case under Title II of the ADA.[9] The same result obtains under the RA. See McDonald v. Com. of Pa., Dept. of Pub.Welfare, Polk Ctr., 62 F.3d 92, 94–95 (3d Cir.1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.").

The Plaintiff's prima facie case is also undermined by his admission that although he was denied requested accommodations at some points in the state litigation, there were instances where those accommodations were granted. See [ECF No. 76-1 at ¶¶ 174, 175, 201, 207, 217, 219]. On other occasions, the Plaintiff, although he did not receive the exact equipment requested, was given alternate equipment – with which he was dissatisfied – in order to help him read small print. See [id, at ¶ 239]. These instances where Muhammad was provided with accommodation undercut his contention that the denial of visual aids was discrimination-based. The fact that he was given equipment on some occasions and not on others suggests that the decisions whether to grant his request may have been based on other factors – small print may

---

[9] Whether this Court agrees with the accommodation decisions made in the state court is irrelevant as the Rooker-Feldman doctrine "prohibits District Courts from adjudicating actions in which "the relief requested . . . requires determining whether the state court's decision is wrong or . . . void[ing] the state court's ruling." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir.1996). The four requirements that must be met for the Rooker-Feldman doctrine to apply are present in this case: (1) the federal plaintiff must have lost in the state court; (2) the federal plaintiff must complain of injuries caused by a state-court judgment; (3) the federal plaintiff must invite the district court's review and rejection of that state-court judgment; and (4) the state-court judgment must have been rendered before the federal action commenced. See McKithen v. Brown, 481 F.3d 89, 97 (2d Cir.2007) (citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir.2005)).

not have been a factor in the proceeding at issue, the particular equipment may not have been available, or other accommodations may have been offered or made available. A finding of discrimination is far from inevitable. In any event, the Court finds that the allegations made in the Second Amended Complaint fail to establish the third required element of the Plaintiff's case – causation.

What the Court has before it is little "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" condemned in Iqbal. See 129 S. Ct. 1949 (quoting Twombly, 550 U.S. at 555). Such allegations do not satisfy the standard applicable to motions to dismiss.

### III. CONCLUSION

For the reasons set out above, the Defendants' Motion to Dismiss [ECF No. 94] should be granted and Plaintiff's Second Amended Complaint should be dismissed with prejudice. The Plaintiff has drafted three complaints, each of which has been fatally flawed. Given the quality of his third effort, the Court finds that further amendment would be futile.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.D.2 B, the parties are permitted to file written objections with the district court in accordance with the schedule included in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal." Siers v. Morrash, 700 F.2d 113, 116 (3d Cir. 1983) (emphasis added). Any response to objections may be filed in accordance with Local Civil Rule 72.D.2.

                                                        Respectfully submitted,

                                                        Lisa Pupo Lenihan
                                                        Chief United States Magistrate Judge

August 25, 2011

Cc: Counsel of Record via CM-ECF

    Akhi Raheem Muhammad
    P.O. Box 42061
    Washington, D.C. 20015-0661