IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKHI RAHEEM MUHAMMAD, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 09-1255 |
| vs. | ) | |
| | ) | Judge Arthur J. Schwab |
| COURT OF COMMON PLEAS OF | ) | Magistrate Judge Maureen P. Kelly |
| ALLEGHENY COUNTY, | ) | |
| PENNSYLVANIA; COMMONWEALTH | ) | |
| OF PENNSYLVANIA; SUPREME COURT | ) | |
| OF PENNSYLVANIA; PENNSYLVANIA | ) | Re: ECF No. 67 |
| SUPERIOR COURT, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that this civil action be dismissed with prejudice pursuant

to Federal Rule of Civil Procedure 37 due to Plaintiff's failure to obey discovery related orders

of this Court and Federal Rule of Civil Procedure 41(b) due to Plaintiff's failure to prosecute this

case.

### II.    REPORT

#### A.    RELEVANT PROCEDURAL HISTORY[1]

Plaintiff, Akhi Raheem Muhammed ("Plaintiff") alleges that he is an adult Muslim

African-American who contends that he suffers from diabetes and associated vision problems

which make it difficult for him to read small print.  On July 30, 2008, the Plaintiff, acting *pro se*,

and proceeding *in forma pauperis*, filed suit in the United States District Court for the Eastern

District of Pennsylvania.  [ECF No. 1].  Plaintiff alleged violations of a panoply of constitutional

rights, as well as rights guaranteed to him by Title II of the American with Disabilities Act of

---

[1] The historical and procedural facts set forth here track those recounted in the Memorandum written by District
Judge Padova.  *Muhammad v. Weis*, Civ. Action No. 08-3616 (E.D. Pa. Aug. 17, 2009).  [ECF No. 88].

1990 ("the ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("the

RA"), 29 U.S.C. § 794(a). [ECF No. 88, at p. 1]. His original Complaint, which named 111

state defendants in their official capacities, was dismissed with leave to amend, because it failed

to specify the role of the individual defendants in the claims made against them. [ECF No. 2].

In September 2008, the Plaintiff filed an Amended Complaint, [ECF No. 4], "which

suffered from many of the same inadequacies as the original" and added claims pursuant to

Section 1983 alleging transgression of his First, Seventh, Ninth, Tenth, and Fourteenth

Amendment rights. [ECF No. 88, at p. 2].

A Second Amended Complaint [ECF No. 67] was filed in June 2009. Having reviewed

it, the District Court for the Eastern District of Pennsylvania wrote:

> Although [it] fill[ed] in many of the factual gaps in [the] previous
> complaints, it span[ned] nearly 70 pages (more than triple the length of the
> First Amended Complaint), name[d] more than 200 defendants, assert[ed]
> more than a half-dozen new causes of action, and describe[d] events wholly
> unrelated to those alleged in previous complaints. From our reading, we
> discern at least seven, [sic] discrete series of transactions that form the basis
> of Plaintiff's myriad claims, including: (1) a 2004 automobile accident in
> Pittsburgh and related litigation in Allegheny County from 2004 to 2007;
> (2) the issuance of two traffic citations in Millvale, Pennsylvania in 2005,
> and related litigation in Allegheny County from 2005 to 2007; (3) a legal
> malpractice lawsuit initiated in Allegheny County in July 2005, and related
> litigation there from 2005 to 2007; (4) a second legal malpractice lawsuit
> initiated in Allegheny County in September 2005 and related litigation there
> from 2005 to 2008; (5) the revocation of Plaintiff's car insurance and
> related litigation from 2007 to 2008; (6) the forced removal of Plaintiff's
> kufi, a religious head covering, at legal proceedings in the courtrooms of
> various Allegheny County judges, named as Defendants, between 2004 and
> 2008; and (7) a 2009 lawsuit against Allegheny County Adult Probation and
> Parole over some money Plaintiff paid them to secure the release of his
> incarcerated nephew.

[ECF No. 88, at pp. 2-3] (footnote and internal record citations omitted). Based on these events,

the Plaintiff asserted ten causes of action, including ADA claims against all of the more than

two hundred governmental entities and employees.

On August 17, 2009, Judge John R. Padova of the Eastern District issued a Memorandum and accompanying Order in which he found that the only viable claims in the Second Amended Complaint were the ADA Title II and RA claims against the Court of Common Pleas of Allegheny County, the Pennsylvania Commonwealth Court, the Pennsylvania Supreme Court, and the Pennsylvania Department of Insurance (the "State Court Defendants").[2] The District Court concluded that these claims were not frivolous or malicious, and that the allegations supporting each were adequate to state a claim. Judge Padova also found that venue as to the claims against the Pennsylvania Department of Insurance lay in the Eastern District, but, as to the remaining Defendants, venue was proper only in the Western District of Pennsylvania. Consequently, the ADA and RA claims against the State Court Defendants were severed and transferred to this Court pursuant to 28 U.S.C. s 1406(a).[3] [ECF No. 92].

On February 18, 2011, the State Court Defendants filed a Motion to Dismiss the Second Amended Complaint. [ECF Nos. 94, 95]. Chief Magistrate Judge Lisa P. Lenihan issued a Report and Recommendation recommending that the Motion to Dismiss be granted and that Plaintiff's Second Amended Complaint be dismissed with prejudice. [ECF No. 101]. On September 19, 2011, District Judge Joy Flowers Conti entered a Memorandum Order granting the Motion to Dismiss and dismissing with prejudice Plaintiff's claims against the State Court Defendants. [ECF No. 102].

---

[2] The remaining claims were dismissed pursuant to provisions of 28 U.S.C. § 1915e (2)(i-iii). Section 1915e (2)(b)(i) permits a district court to dismiss *sua sponte* any claims determined to be "frivolous or malicious." Section 1915e(2)(B)(ii) allows the Court to dismiss portions of the Complaint that fail to state a claim upon which relief may be granted," and subsection (iii) permits the District Court to dismiss claims "seeking monetary relief against a defendant who is immune from such relief."

[3] This section provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Plaintiff filed an appeal of the dismissal to the United States Court of Appeals for the Third Circuit. [ECF No. 104]. On May 15, 2012, the Court of Appeals issued an Opinion finding that the District Court erred in dismissing Plaintiff's ADA claims that purportedly occurred between July 30, 2006 and July 30, 2008. As a result, the Court of Appeals for the Third Circuit affirmed in part, vacated in part and remanded to this Court for further proceedings as to the ADA claims. [ECF Nos. 107, 115-2].

Following remand, Chief Magistrate Judge Lenihan issued an Order of Recusal on July 16, 2012. [ECF No. 120]. District Judge Conti issued an Order of Recusal on July 18, 2012. [ECF No. 123]. This case was then reassigned to the undersigned Magistrate Judge and District Judge Arthur J. Schwab.

Following the reassignment of this case, this Court promptly scheduled an initial case management conference for September 13, 2012. In order to move the case forward in a constructive manner, the Court directed Plaintiff and counsel for the State Court Defendants to attend in person. All parties were directed to be prepared to address anticipated discovery and the establishment of a discovery schedule relative to the remaining ADA claims. [ECF No. 125].

A lengthy initial case management conference was conducted on September 13, 2012, with a court reporter in attendance. The conference was attended by Plaintiff and counsel for the State Court Defendants. During the conference, this Court conducted a thorough review of the remaining claims, anticipated discovery and all related issues. [ECF Nos. 128, 161]. The Court directed that, given the limited nature of the case, discovery was to be completed in 90 days. A case management order was issued ordering discovery would end on December 13,

2012, and that a post-discovery status conference would be held on December 11, 2012 at 10:00 a.m. Plaintiff and defense counsel were ordered to "attend in person." [ECF No. 129].

Since the September 13, 2012 initial case management conference, Plaintiff has repeatedly disregarded orders of this Court; has failed to appear in Court as directed; has refused to engage in the discovery process; and has failed to prosecute his case. For the reasons that follow, the claims of this "experienced litigant" should be dismissed.[4]

## B. DISCUSSION

### 1. This Action Should Be Dismissed For Failure To Comply With Court Orders Pursuant To Fed. R. Civ. P. 37 (b)(2).

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes a district court to dismiss an action where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). *See Shahin v. Delaware*, 345 F. App'x 815, at \*\*1-2 (3d Cir. Sept. 10, 2009); *Shuman v. Freehold Tp.*, 2012 WL 6053146, at \*3 (D.N.J. Nov. 29, 2012).

#### a. Plaintiff has failed to provide discovery responses and abide by Court discovery orders.

##### (1) Failure to provide discovery responses

Following the case management conference, the State Court Defendants served Plaintiff with Defendants' First Set of Interrogatories and Defendant's First Request for Production of Documents. These discovery requests consisted of ten (10) interrogatories and seven (7) requests for production of documents that were narrowly tailored to Plaintiff's remaining ADA claims for the two year period defined by the Court of Appeals for the Third Circuit. Plaintiff's responses to defendants' discovery requests were due on November 7, 2012.[5] Plaintiff failed to

---

[4] *See* ECF No. 115-2, at p. 2: *Muhammad v. Ct of Common Pleas*, No. 11-3669 (3d Cir. May 15, 2012).

[5] The discovery requests were mailed to Plaintiff on October 5, 2012. Allowing three days for service as provided for by Fed. R. Civ. P. 6(d), Plaintiff's responses were due no later than November 7, 2012. [ECF No. 145, at p. 1].

respond to the Interrogatories and Request for Production of Documents by November 7, 2012.

He failed to raise timely objections to the discovery requests. [ECF No. 145]. Plaintiff did not

request an extension of time to provide the responses.

Not until over three weeks after the discovery responses were due, did Plaintiff file what

can best be described as a frivolous Motion to Strike Judicial Defendants Interrogatories and

Requests for Production of Documents (the "Motion to Strike"). [ECF No. 143]. The Motion to

Strike consisted of five single sentence paragraphs and was not supported by any legal authority.

Plaintiff simply averred that: defendants' request for medical records (as to the alleged disability)

was "nothing more than a **FISHING EXPEDITION!!!!!,**" and his medical records are

"**STRICTLY CONFIDENTIAL.**" [ECF No. 143, at ¶¶ 2, 3]. He also argued that this Court

has many of his medical records under seal and, if the records are not under seal,

"**MUHAMMAD IS DEMANDING THAT HIS MEDICAL RECORDS THAT ARE**

**CURRENTLY IN THE POSSESSION OF THIS COURT BE IMMEDIATELY**

**SEALED!!!!!!"** [ECF No. 143, ¶¶ 4, 5]. The State Court Defendants filed a Response in

Opposition to the Motion to Strike asserting that their requests were narrowly tailored to

Plaintiff's disability claim, they had provided a confidentiality agreement to Plaintiff to review

and sign and they were not aware of any medical records under seal. [ECF No. 145].[6]

On December 11, 2012, this Court denied Plaintiff's Motion to Strike and directed

Plaintiff to respond to the Interrogatories and Request for Production of Documents by

December 21, 2012. [ECF No. 147].

---

[6] Contrary to Plaintiff's baseless assertion that this Court has his medical records under seal, Plaintiff never produced any of his medical records to this Court. As such, this Court did not hold any of his medical records under seal.

###### (2)    Failure to obey Order of Court dated December 11, 2012

Not only did the Court mail Plaintiff the Order dated December 11, 2012, directing that he provide the discovery responses by December 21, 2012, but the Court also mailed to him the Hearing Memo of the post-discovery status conference (that he failed to attend as previously ordered). [ECF Nos. 146, 147]. In the Hearing Memo, Plaintiff was directed to respond to Defendants' Interrogatories and Requests for Production of Documents by December 21, 2012. He was further notified that if he fails to do so, he may be subject to sanctions. [ECF No. 146].

###### (3)    Failure to abide by Order of Court dated January 7, 2013

Plaintiff failed to comply with the Order and Hearing Memo of December 11, 2012, and did not provide responses to the Interrogatories and Request for Production of Documents by December 21, 2012. As a result, on January 4, 2013, the State Court Defendants filed a motion seeking to again compel Plaintiff to produce the discovery responses. [ECF No. 152]. On January 7, 2013, this Court issued another order directing Plaintiff to respond to the Motion. [ECF: 1/7/13 Text Order]. As of this date, Plaintiff has not filed a response. As of this date, Plaintiff has still failed to provide the discovery responses as directed by this Court.

###### (4)    Failure to enter into confidentiality agreement

During the initial case management conference on September 13, 2012, counsel for the State Court Defendants informed the Court that her limited interrogatories and request for production of documents would include a request for documentation from Plaintiff's treating physician or specialist as to Plaintiff's alleged disability upon which his ADA claims were based. [ECF No. 161, at p. 23]. Plaintiff expressed concern regarding "this confidentiality patient-

doctor privilege" and stated that he did not want his medical records "shared."  The Court

advised the parties to enter into a confidentiality order to protect the medical information.  [ECF

No. 161, at pp. 24-35].   As directed, counsel for Defendants prepared a confidentiality

agreement and provided it to Plaintiff to sign.  [ECF No. 145-3].  Plaintiff refused to sign the

confidentiality agreement.  As of this date, Plaintiff has not signed the confidentiality agreement

and has still not produced the requested medical records.

> **b.      Plaintiff has failed to comply with Court orders directing his attendance of discovery conferences.**

>> **(1)      Failure to appear at post-discovery status conference on December 11, 2012**

Following the initial case management conference on September 13, 2012, the Court

issued a Case Management Order.  In the Order, the Court scheduled a post-discovery status

conference for December 11, 2012, at 10:00 a.m. and expressly directed plaintiff and counsel for

Defendants to "attend in person."  [ECF No. 129].  A copy of the Order was mailed to Plaintiff at

P.O. Box 42061, Washington, D.C. 20015-0061.[7]

On December 11, 2012, Plaintiff failed to appear at the post-discovery status conference

as directed by the Court.  [ECF No. 146].  Plaintiff did not file any request for postponement.  As

a result, the Court issued a Rule to Show Cause why Plaintiff should not be held in contempt for

failure to appear.  The Court directed Plaintiff to file a response to the Rule by December 21,

2012.  Plaintiff was further notified that if he failed to file a response that he "may be subject to

sanctions up to and including the dismissal of this case."  [ECF No. 148].  Despite being

expressly directed by the Court to file a response to the Rule to Show Cause, Plaintiff did not file

a response.

---

[7] During the Initial Case Management Conference on September 13, 2012, the Court confirmed on the record that Plaintiff's mailing address of P.O. Box 42061, Washington, D.C. 20015-0661 was the address Plaintiff wanted his mail sent to.  [ECF No. 161, at p. 32]

**(2)** **Failure to appear at post-discovery status conference on January 14, 2013**

As a result of Plaintiff's failure to appear as ordered at the post-discovery conference on December 11, 2012, the Court scheduled another post-discovery conference for January 14, 2013. [ECF No. 148]. Again, the Court notified Plaintiff that if he failed to appear in person at this discovery status conference that "he may be subject to sanctions up to and including the dismissal of this case." [*Id.*].

On January 14, 2013, Plaintiff again failed to appear for the post discovery conference. Plaintiff did not file any motion for postponement or contact the Court by telephone. [ECF No. 154]. As a result, the Court issued another Rule to Show Cause ordering Plaintiff to show cause why he should not be held in contempt for failing to appear. Again, Plaintiff was notified if he failed to file a response to the Rule to Show Cause, that he may be subject to sanctions up to and including the dismissal of his case. [ECF No. 155].

**(3)** **Refusal to attend any court conference in the Western District of Pennsylvania**

Plaintiff filed a Response to the second Rule to Show Cause (the "Response") on January 25, 2013. [ECF No. 157]. In the Response, Plaintiff gives "legal notice" that he will no longer travel from Los Angeles, California, and/or the District of Columbia to Pittsburgh, Pennsylvania …." [ECF No. 157, at p. 2].[8] He claims that he cannot travel to Pittsburgh due to "deadly and chronic diseases." [*Id.*]. He also complains that when he travelled by bus to attend the initial case management conference in September 2012 that he was "deprived of any and all required sleep." [ECF No. 157, at p. 4]. Further, Plaintiff asserts that he was diagnosed with the

---

[8] In the opening paragraph of his Response, Plaintiff attacks the United States District Court for the Western District of Pennsylvania, as well as the Court of Common Pleas of Allegheny County as "**IRREFUTABLY, THE ABSOLUTE WORST COURTS WITHIN THESE ENTIRE UNITED STATES, WITH REGARDS TO BLATANTLY AND INTENTIONALLY VIOLATING INDIVIDUALS' CONSTITUTIONAL AND/OR CIVIL RIGHTS.**" [ECF No. 157, at p.1].

possibility of developing "potentially fatal blood clots" with his "arms; backs; legs; feet; heart, and throughout entire his body, due to being CRAMPED in a sedentary position for long periods of time on a plane, train, automobile and/or bus."  [ECF No. 157, at p.5].

Simply put, Plaintiff's alleged reasons for his refusal to attend conferences before this Court are unsubstantiated and disingenuous.

First, Plaintiff has never provided this Court with any written report from any medical provider setting forth any medical diagnosis whatsoever that impacts his ability to participate in the litigation of this case.  In the Response, Plaintiff attached two substantially redacted pages. The two pages do not set forth a hospital or medical provider name.  In fact, the Court takes judicial notice that Plaintiff has hand-printed his own name on each of the two pages.  Even if the two pages related to Plaintiff, neither page contains any expert medical opinion regarding his ability to travel.  [ECF No. 157-1].

Second, this Court finds that Plaintiff's claim that he cannot travel to Pittsburgh to appear before this Court is disingenuous at best.  It appears from the record before this Court that Plaintiff can travel, he just does not wish to travel to Pittsburgh.  During the initial case management conference in September 2012, Plaintiff told this Court that he lives in Beverly Hills, California and Washington, D.C.  [ECF No. 161, at pp. 31-33].  He explained that "I spend a lot of time out there" in Beverly Hills and "I like to go out there to visit them especially during times just like Ramadan and stuff like that."  [ECF No. 161, at p. 32].  Plaintiff also told the Court that "sometimes I'm not even in D.C. or Beverly Hills," implying that he travels to other geographic locations as well.  [ECF No. 161, at p. 34].  Furthermore, in the Response, Plaintiff again states that he is living in Los Angeles, California and Washington, D.C.  [ECF No. 157, at

10

p. 2].[9]  Clearly, Plaintiff is capable and willing to travel cross-country between California and the

District of Columbia.  He simply appears adverse to travelling to Pittsburgh to appear before this

Court.  Furthermore, the Court takes notice of the fact that Plaintiff has previously litigated at

least seven matters before the Court of Common Pleas of Allegheny in Pittsburgh.  [ECF No. 88,

at pp. 2-3].[10]

Under these circumstances, Plaintiff's failure to attend the discovery conferences as

ordered by the Court alone suggests that this case should be dismissed.  *See Travelodge Hotels,*

*Inc. v. Ravin Hotels & Investments, LLC*, 2012 WL 3575302, at *3 (D.N.J. July 20, 2012).  *See*

*also Hall v. Holman*, 265 F. App'x 135, at *1 (3d Cir. Feb. 20, 2008).

### 2.     This Action Should Be Dismissed for Failure to Prosecute Pursuant to Fed. R. Civ. P. 41 (b).

Under Federal Rule of Civil Procedure 41(b), a district court may dismiss an action *sua*

*sponte* due to plaintiff's failure to prosecute the case.  *See Chambers v. NASCO, Inc.*, 501 U.S.

32, 24 (1991)*; Lopez v. Cousins*, 435 F. App'x 113, 2011 WL 2489897, at *1 (3d Cir. 2011).  In

order for a court to determine whether dismissal of a case is appropriate, the United States Court

of Appeals for the Third Circuit has set out a six factor balancing test which requires

consideration of: 1) the extent of the party's personal responsibility; 2) the prejudice to the

adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history

of dilatoriness; 4) whether the conduct of the party or attorney was willful or in bad faith; 5) the

effectiveness of sanctions other than dismissal; and 6) the meritoriousness of the claim or

defense.  *Poulis v. State Farm and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).  Further,

---

[9] This Court also takes judicial notice that many of the envelopes containing Plaintiff's mailings to this Court are sent from a post office in the State of Maryland.

[10] Plaintiff's statement in the Response that he should not be required to appear in person before the Court is also completely contrary to Plaintiff's Request to Appear In Person for All Legal Proceedings that he previously filed in this action. *Muhammad v. Weis*, Civ. Action No. 08-3616.  [ECF No. 95].

there is no "magic formula" for balancing the Poulis factors, and not all of the six factors need to be satisfied in order to warrant dismissal. *See Karpiel v. Ogg, Cordes, Murphy & Ignelzi, L.L.P.*, 405 F. App'x 592, 595 (3d Cir. 2010), *citing Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) *and Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003).

### a.      Extent of personal responsibility

In this case, the first of the *Poulis* factors weighs heavily in favor of dismissal. First, Plaintiff has failed to provide answers to Interrogatories and responses to the Requests for Production of Documents; has failed to execute the confidentiality agreement to facilitate the production of medical records; has failed to initiate any discovery relative to his ADA claims; has failed to obey discovery orders; and failed to obey court orders directing him to attend post discovery status conferences. Furthermore, the Court has given Plaintiff repeated warnings that failure to comply with these orders could result in sanctions up to and including the dismissal of this action. Despite the issuance of repeated orders, Plaintiff has refused to comply.

Plaintiff is proceeding *pro-se,* and, as such, he bears full responsibility for any failure in the prosecution of his claims. *See Briscoe v. Klaus*, 338 F. 3d 252, 258-59 (3d Cir. 2008) (a *pro-se* plaintiff is personally responsible for the progress of his case and compliance with a court's orders).

### b.      Prejudice to the adversary

In this case, the prejudice to the State Court Defendants as the result of the conduct of Plaintiff is substantial. Plaintiff has alleged ADA claims against them. Nonetheless, Plaintiff has refused to provide any discovery responses as to the most basic elements of his failure to accommodate claims including: the identification of his specific disability; the identities of the health care providers who have diagnosed and treated his disability; the specific

12

accommodation(s) that he requested between July 30, 2006 and July 30, 2008; and the specific details of each request for accommodation. Plaintiff's refusal to provide this basic information has made it impossible for the State Court Defendants to discern what Plaintiff is specifically claiming, conduct discovery, take a meaningful deposition of Plaintiff and prepare a defense. Accordingly, the State Court Defendants are substantially prejudiced by Plaintiff's conduct.

### c. History of dilatoriness

Plaintiff has repeatedly engaged in a pattern of conduct of failing to move this case forward. Plaintiff has consistently engaged in these dilatorious efforts throughout the course of this litigation.

First, as recited at length in this Report and Recommendation, *supra*, Plaintiff has failed to engage in discovery and has failed to obey court orders to produce discovery and attend discovery conferences. He has also disregarded other related court orders.

Second, despite the fact that Judge Padova correctly ruled in August 2009 that Plaintiff's ADA claims should be transferred to this Court because they arose in Allegheny County [ECF Nos. 88, 89], Plaintiff has repeatedly filed motions and submitted other filings demanding a change of venue back to the United States District Court to the Eastern District of Pennsylvania. [ECF Nos. 103, 116, 127, 161 at pp. 41-44, 133, 142, 157].[11] In these frivolous filings that continue to waste judicial resources, Plaintiff keeps asserting his personal preference that the case be located in Philadelphia as well as unsubstantiated allegations of the bias and the incompetence of this Court.

Thirdly, Plaintiff has continued to submit filings claiming that he needs an accommodation of a vision impairment by this Court. Nonetheless, he has failed to obey orders

---

[11] The Court notes that in each of Plaintiff's requests for change of venue, he was seemingly willing to travel to Philadelphia from California or the District of Columbia.

of this Court addressing this request. During the initial case management conference in September 2012, Plaintiff said that he needed "equipment" to state his claim. [ECF No. 161, at p. 20]. The Court instructed Plaintiff to file a motion setting forth his medical condition, specific disability and the requested accommodation. He agreed to file the motion by September 20, 2012. [ECF No. 161, at pp. 20-22]. The Hearing Memo entered by the Court reflected this deadline. [ECF No. 128]. Plaintiff failed to file the motion. Despite Plaintiff's failure to comply with the order, this Court looked into Plaintiff's request of an accommodation. On September 27, 2012, this Court entered an order advising Plaintiff that the desktop video magnifier that he described was available for his use in the Office of the Clerk of Courts during each business day. [ECF No. 132]. Nonetheless, Plaintiff has continued to file numerous unsubstantiated documents accusing this Court of not accommodating his alleged vision impairment. [ECF Nos. 135, 137, 149, 151, 156, 157 at p. 3].

### d.      Willful or bad faith acts

Plaintiff's continued failure to abide by court orders has been addressed at length in this Report and Recommendation. This Court finds Plaintiff's conduct clearly evidences his willful disregard of the directives of this Court. Plaintiff's intentional defiance of this Court is further demonstrated by the recent Response that he filed serving "legal notice" that he will not come to Pittsburgh for the legal proceedings in this case. [ECF No. 157, at p. 2].

It is noted, that Plaintiff has engaged in a litany of bad faith attacks on the Court. As recognized by the United States Court of Appeals for the Third Circuit, Plaintiff's filings are "riddled with invectives," [ECF No. 115-2, at p. 3 n.1], and he has repeatedly accused the Court of being unfair, prejudiced, "absolutely the worst court," of blatantly violating" his rights, and of

"unlawful scrutiny and unlawful harassment." [ECF Nos. 127, 133, 135, 137, 139, 140, 142, 143, 149, 151, 156, 157].

### e.      Effectiveness of sanctions

As to the fifth *Poulis* factor, it is clear that alternative sanctions will not be effective. Plaintiff has repeatedly ignored court orders, including orders notifying Plaintiff that failure to abide by the Order may result in the sanction of dismissing his case. Alternative sanctions, such as monetary penalties are not appropriate with indigent *pro se* parties. *Emerson v. Thield College*, 296 F.3d 184, 191 (3d Cir. 2002).

### f.      Meritoriousness of claims or defenses

Generally, courts will use the standard for a Rule 12 (b)(6) motion to dismiss to decide if a claim is meritorious. *Briscoe*, 538 F.2d at 263. In this case, the Court of Appeals for the Third Circuit has already determined that Plaintiff has alleged sufficient facts to support his ADA claims against the State Court Defendants during the period between July 30, 2006 and July 30, 2008, at the motion to dismiss stage. [ECF No. 115-2, at p. 8]. The Court nevertheless finds that this factor does not outweigh the other *Poulis* factors, which the Court has carefully considered and determined that they weigh in favor of dismissing this action. This Court therefore recommends dismissal of this case. This Court has repeatedly attempted to show leniency to Plaintiff and given him the benefit of the doubt as a *pro se* litigant. However, in light of his consistent non-cooperation in moving this case forward, this Court's patience has ended.

## III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that this civil action be dismissed with prejudice for failure to obey discovery related orders pursuant to Fed. R. Civ. P. 37(b)(2) and for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal.  *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:     Akhi Raheem Muhammad
        P.O. Box 40251
        Washington, DC 20016

        All Counsel of Record via CM-ECF